Argued March 9; affirmed April 20, 1943

# RAHOUTIS *v.* UNEMPLOYMENT COMPENSA-
## TION COMMISSION ET AL.
### (136 P. (2d) 426)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK and BRAND, Associate Justices.

*Eugene E. Burdick* and *W. B. Shively*, both of Portland (Phelps & Burdick, of Portland, on the brief), for appellant.

*W. H. Dashney* and *H. Lawrence Lister*, both of Salem (I. H. VanWinkle, of Salem, on the brief), for respondents.

This is a suit for a declaratory judgment by the plaintiff, George A. Rahoutis, a real estate broker, against the unemployment compensation commission of Oregon, as defendant. The issue presented relates to the contested liability of plaintiff to make contributions to the unemployment compensation trust fund upon the basis of the earnings of plaintiff's real estate salesmen.

The complaint alleges and defendant admits that during all the times in question the plaintiff has been and is a duly licensed real estate broker engaged principally in the sale of real estate of third persons and

of his own and that for the purpose of making sales plaintiff has employed approximately thirteen salesmen whose duties are to find and procure sales of plaintiff's real estate and that of his clients. It is alleged and admitted that the contract and arrangement between the plaintiff as broker and each of said salesmen was and is substantially in accordance with the written contract, which reads in part as follows:

"Whereas, the salesman is a duly registered real estate salesman and properly qualified to deal with the public as such, and * * *

"THEREFORE

"1. The broker agrees to make available to the salesman all current listings of the office, except such as the broker may find expedient to place exclusively in the temporary possession of said broker or some other salesman, and agrees to assist the salesman in his work by advice, instruction, and full cooperation in every way possible.

"2. The broker agrees that the salesman may share with other salesmen such facilities as the office may be able to furnish, in connection with the subject matter of this contract.

"3. The salesman agrees to work diligently and with his best efforts to sell, lease, or rent any and all real estate listed with the broker, to solicit additional listings and customers for said broker, and otherwise promote the business of serving the public in real estate transactions, to the end that each of the parties hereto may derive the greatest profit possible.

"4. The salesman agrees to conduct his business and regulate his habits so as to maintain and to increase, rather than diminish, the good will and reputation of the broker, and the parties hereto agree to conform to and abide by all laws, rules and regulations and codes of ethics that are binding upon, or applicable to, real estate brokers and salesmen.

"5. The usual and customary commission shall be charged as provided by the Portland Realty Board of Portland, Oregon, unless special arrangements shall be made and in event of special contract relating to any particular transaction the broker shall advise the salesman of said contract, and when the salesman shall perform any service hereunder whereby a commission is earned the salesman shall, when said commission is collected and not otherwise, receive 50% of said commission, less such amounts as may be paid for securing the listing or listings as hereinafter provided, after all expenses incurred in the collection of said commission or the attempt to collect said commission, and the broker shall receive the remainder of said commission. In the event of special arrangements with any client, or if property of the broker is listed, a special rate of commission may apply, such rate to be agreed upon by the broker and the salesman. In the event that two or more salesmen participate in such a service or claim to have done so, the amount of the commission over that accruing to the broker, shall be divided between the participating salesmen according to agreement between them. In no case shall the broker be liable to the salesman for any commission unless the same shall have been collected from the party for whom the service was performed. The broker shall not be liable to the salesman for any expenses incurred by him or for any of his acts, nor shall the salesman be liable to the broker for office help or expenses and the salesman shall have no authority to bind the broker by any promise or representation unless specifically authorized in a particular transaction, but expenses for attorneys' fees and all expenses incurred in the collection or the attempted collection of commissions shall be paid by the parties in the same proportion as provided for herein in the division of the commission. Suits for commission shall be maintained only in the name of the broker and the salesman shall be construed to

be a sub-agent only with respect to the clients or customers for whom services shall be performed, and shall otherwise be deemed to be an independent contractor and not a servant, employee, joint adventurer or partner of the broker.

"6. That the broker may at his option take notes or securities for the payment of commission when the seller is unable to pay the same in cash and if the broker shall take notes or securities in lieu of cash, said salesman shall be paid his percentage of said notes or securities at the time the same are paid for in cash to the broker, after deducting any sums to be paid in the collection thereof.

"7. Where the salesman takes a listing outside of the office he shall be entitled to 5% of the full net commission after said property is sold, and where a salesman secures a listing by mail or inside of the broker's office, he shall be entitled to 2½% of the full net commission after said property is sold. The broker reserves the right to purchase any property listed by the salesman or by the office, but if the salesman desires to purchase any property so listed he must first obtain the consent of the broker. In event the salesman sells his own property, or property controlled by him, while this contract is in force and effect, then he agrees that he will pay the broker one-half of the regular commission for said property so sold. It being understood that no sale or exchange shall be made without a full commission being paid to the broker, regardless of whether the salesman purchases said premises or sells the same to a third person, the division of the commission to be made, as aforesaid. It is further understood that said commission for securing listings, in the sum of 5% or 2½%, whichever the case may be, as hereinbefore referred to shall be deducted from the commission to be paid to the salesman making the sale and no part thereof shall be deducted from the portion of the commission due to the broker.

"8. This contract and the associations created thereby may be terminated by either party hereto at any time upon giving notice to the other but the right of the parties to any commission which accrued prior to said notice shall not be divested by the termination of this contract.

"9. The salesman shall not after the termination of this contract, use to his own advantage or to the advantage of any other person or corporation any information gained from the files or business of the broker, and shall return to the broker all stationery belonging to the broker, all legal papers and any and all property of every kind and nature in his possession and belonging to the broker.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

GEORGE A. RAHOUTIS CO.

By _____
Broker

_____
Salesman

Witnesses:

_____

_____ "

The complaint alleges that there were "certain other agreements and understandings not set out and contained in said contract."

It is alleged that under these argeements and understandings each salesman agrees to devote

"* * * reasonable amount of his time to the business of plaintiff, full time not being required, the time to be devoted to plaintiff's business to be left to the discretion of the salesman, each salesman has, and at all times had, the privilege of engaging in any other business desired by him

and some of the said salesmen have so engaged and do now so engage. None of said salesmen are required to report to plaintiff's office at any definite time or to devote any definite time to his work, that being left to the discretion of the salesman; none of said salesmen are required to keep the plaintiff advised of their activities on plaintiff's behalf.''

It is alleged that the plaintiff holds ''pep meetings'' at his place of business which all salesmen are privileged but not required to attend, that no orders are given at such meetings, that the salesman is privileged but not required to use plaintiff's office for the closing of his deals and the like, that the plaintiff furnishes his salesmen with forms, furnishes advertising and publishes the same at plaintiff's expense, but that some salesmen at their own discretion run their own advertisements, that each salesman provides his own transportation for himself and his customers, that plaintiff provides telephone and telephone service, that

''Each of said salesmen is free to carry on his business and make sales in accordance with his own discretion. The matter of methods to be pursued in making sales is left wholly and exclusively to the individual salesmen and the only requirements made are that he be fair, honest and ethical in his dealings.''

The defendant admits the allegations concerning the holding of ''pep meetings'', admits that the plaintiff gives the salesmen suggestions, forms, advertising, telephone, office space, etc., and denies the other allegations except as to the written contract.

Paragraphs six and seven of the complaint present in general terms the specific issues which are sub-

mitted to the court for determination. They read as follows:

"That except as herein mentioned, each of said salesmen at all times has been, is now and will continue to be free from the control and direction of the plaintiff, without any right on the part of the plaintiff to direct or control the methods used in or the manner of making sales.

"That each of said salesmen at all times herein mentioned had and now has a license from the Real Estate Department or Commissioner of the State of Oregon entitling him to carry on business as a real estate salesman in said estate [state] as an independent profession; that at and during all said times, each of said salesmen has been and is now customarily engaged in an independently established business of the same nature as that involved in his contract of service."

Both paragraphs are denied by the defendant.

It is alleged and admitted that the defendant commission has demanded of the plaintiff that he comply with the statute as is required of one who is subject to its terms and that he pay into the fund the amounts due as contributions under the law for the period between January 1, 1936, and December 31, 1938, that the plaintiff has failed and refused to comply with the defendant's demand or to pay the sums alleged to be due and that defendant has threatened the plaintiff with the imposition of penalties and criminal prosecution as provided by statute on account of the alleged refusal. The question squarely presented is whether or not plaintiff comes within the terms of the unemployment compensation act. Both parties agree that a justiciable controversy exists and pray for a declaratory judgment determining the plaintiff's status under the law.

The answer of the commission affirmatively asserts the plaintiff's liability under the act, that the commission made an investigation and that

"* * * based upon such investigation and findings, defendant, State Unemployment Compensation Commission, determined that plaintiff was a qualified employer within the meaning of the Oregon Unemployment Compensation Law, and that said salesmen were engaged in employment within the meaning of said law, said investigation and findings revealing that said salesmen were not free from the direction and control of plaintiff either under the contract of service or in fact, and that said salesmen were not and could not be, by the terms of their contract with plaintiff, engaged in an independently established business of the same nature as that involved in the contract of service."

The reply is substantially a general denial. Upon trial the circuit court held that the plaintiff was subject to the act and must make contributions as therein provided. Plaintiff appeals.

BRAND, J.

■ It will be observed that the controversy relates to the alleged duties of the plaintiff during the period from January 1, 1936, to December 31, 1938. The Unemployment Compensation law was passed in 1935, Oregon Laws, Special Session, Chapter 70, p. 150. It was amended by Chapter 398, Oregon Laws, 1937, effective March 11, 1937. On the latter date the law was changed in many and important respects. The crucial definitions of the words "employer" and "employment" as found in the two acts differ materially. Neither the plaintiff nor the defendant has discussed the construction or the ap-

plicability of the 1935 act, as to that portion of the disputed period which lies between January 1, 1936, and March 11, 1937, the effective date of the amendatory act, yet they ask the court to declare the rights of the parties for the entire period from January 1, 1936, to December 31, 1938. As stated by the United States Supreme Court in a somewhat similar situation, "We decline the invitation."

We direct our attention to the problem presented by the briefs and limit our decision to such period as was controlled by the 1937 act. The statute provides that

"On and after the first day of January, 1936, contributions shall be payable by each employer then subject to this act. Contributions shall become payable by any other employer on and after the date on which he becomes subject to this act." Laws of 1937, p. 594, Chap. 398, § 12; O. C. L. A. 126-715.

" 'Employment' means service for an employer * * * performed for remuneration or under any contract of hire, written or oral, express or implied." Oregon Laws, 1937, p. 583, Chap. 398, § 2 (f); O. C. L. A. 126-702 (f).

Subdivision (E), subsections (1) and (2) of the act as amended, provides that

"Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under this contract of service and in fact; and

"(2) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service." Laws of 1937, p. 584, Chap. 398, § 2 (f) (E); O. C. L. A. 126-702 (f) (E).

Subject to minor exceptions there is little conflict in the testimony relating to control or direction by the plaintiff. In general it conforms to the allegations of the complaint. The chief disagreement relates to the inferences which should be drawn from the provisions of the written contract. The defendant commission contends that the provisions of the contract establish that the salesmen are in fact and in law subject to the direction and control of plaintiff, notwithstanding the testimony of the witness that the plaintiff exercises no control. It is argued that at the least there is substantial evidence that the salesmen are subject to the right and power of control by plaintiff.

██ Two issues are presented for our determination under the provisions of the statute. The first relates to the alleged freedom of control, the second to the alleged existence of an independently established business. At the outset we must consider whether a justiciable controversy exists and, if so, whether a declaration of rights should, as a matter of discretion, be made upon both of the foregoing issues. Jurisdiction to render a declaratory judgment cannot be conferred by stipulation. 16 Am. Jur. p. 324, § 52. The ultimate question for determination closely resembles that presented in *Singer Sewing Machine Co. v. State Unemployment Compensation Commission*, (hereinafter called the Singer case), 167 Or. 142, 103 P. (2d) 708, 116 P. (2d) 744, 138 A. L. R. 1398 (1941). But the two cases have reached us by a totally different route. In the Singer case a former salesman of the company, being unemployed, filed a claim for benefits under the act. After various hearings as provided by statute, the commission made findings of fact, conclusions of law, and a decision for the claimant. The Singer Company, pursu-

ant to statute, filed a complaint in the circuit court against the commission to review the administrative decision. That court held that the claimant was not entitled to unemployment benefits, and the commission appealed. The statute provides that

"In any judicial proceeding under this section, the findings of the commission as to the facts if supported by evidence and, in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law." Laws of 1937, p. 593, Chap. 398, § 10.

See Laws of 1939, Chap. 208 and O. C. L. A. 126-711 for the identical provision. Upon appeal this court took notice of the findings of the commission and held that there was testimony of a substantial nature in support thereof. Under these conditions, there being no claim of fraud and no jurisdictional or constitutional issue, the commission's findings were conclusive, and the company was adjudged to be subject to the act.

■ In the brief of the commission in the case at bar, we find the following:

"In this case, the Commission has found, as a matter of fact, that the salesmen are not free from the direction and control of appellant. Unless the court can say, as a matter of law, that there is no evidence to support such finding, it must be sustained."

This position is untenable. The findings which were conclusive in the Singer case were made upon a claim for benefits, and after hearing and were formally entered as such, as required by statute. In this declaratory judgment suit defendant alleges that the commission investigated the facts and found and determined that the plaintiff was subject to the act. There is no statute which gives conclusive effect to such a

determination. There is no allegation of a claim for benefits filed or of any hearing. The alleged findings of the commission amount to no more than this, that upon being sued, the commission investigated and decided that it was right and therefore defended the action. The defendant cannot lift itself by its judicial boot straps by holding that its opinion on the merits of the litigation binds the court to find in its favor whenever there is substantial evidence to support the opinion. If we are to decide in this case whether the salesmen are free from the control of the plaintiff within the meaning of the statute the decision must be based upon our own conclusions arrived at by weighing the evidence as in a trial *de novo*.

Serious questions arise as to the propriety of determining the issue of "freedom from control" in this suit for declaratory judgment. There may be evidence both ways on the issue of control. Several provisions of the written contract squint at control in fact, notwithstanding the extreme sapience with which the contract was drafted (perhaps with the statute in mind). The written agreement provides that the broker shall make available to the salesman all current listings "except such as the broker may find expedient to place exclusively in the temporary possession of said broker or some other salesman." The salesman agrees to "work diligently and with his best efforts to sell, lease, or rent any and all real estate listed with the broker." The "usual and customary commission shall be charged" unless special arrangements shall be made, "and in event of special contract relating to any particular transaction the broker shall advise the salesman of said contract." "Suits for commission shall be maintained only in the name of the broker." "The

broker reserves the right to purchase any property listed by the salesman or by the office, but if the salesman desires to purchase any property so listed he must first obtain the consent of the broker.'' The contract may be terminated and the salesman discharged at any time. Even if we were to assume that the common law relation of master and servant must be established before the unemployment act becomes applicable, still there is respectable authority which indicates that the power to discharge is relevant upon the issue of the power to control the conduct of the alleged servant. O. C. L. A. 126-702 (f) (E) (1).

> ''A servant is one whose employer has the order and control of work done by him, and who directs or may direct the means as well as the end. Arnold v. Lawrence, 72 Colo. 528, 530, 213 P. 129. By virtue of its power to discharge, the company could, at any moment direct the minutest detail and method of the work. The fact, if a fact, that it did not do so is immaterial. It is the power of control, not the fact of control, that is the principal factor in distinguishing a servant from a contractor.'' *Industrial Commission of Colorado v. Bonfils,* 78 Colo. 306, 241 P. 735 at 736 (1925).

See also *Bowen v. Gradison Construction Co.,* 236 Ky. 270, 32 S. W. (2d) 1014 (1930); *Burruss v. B. M. C. Logging Co.,* 38 N. M. 754, 31 P. (2d) 263 (1934); *L. B. Price Mercantile Co. v. Industrial Commission,* 43 Ariz. 257, 30 P. (2d) 491 (1931); *Sound Cities Gas & Oil Co. v. Ryan* 13 Wash. (2d) 457, 125 P. (2d) 246 (1942).

Here we have a complicated contract, coupled with extracontractual practices and some (though not much) conflicting testimony on the basis of which different inferences might be drawn as to the power of control.

■ If this litigation had been initiated by filing a claim for benefits by an unemployed salesman, formal action by the commission would, of course, intervene before the question could reach the judiciary, and when statutory judicial review was later invoked the evidence would be weighted with the finding of the commission as in the Singer case, supra. In such a case, a prayer for a declaratory judgment prior to determination of the board would appear to be inappropriate. The controversy would not be ripe for decision because the administrative procedure would not have been first exhausted. But in this case there is no unemployed salesman nor any claim for benefits, and there may never be. It may therefore be impossible ever to raise the question by means of the administrative procedure employed in the Singer case. Yet if the position of the commission is correct, it is and for some years has been the duty of the plaintiff to contribute to the compensation fund. The remedies provided by statute in this situation are judicial, not administrative. The commission may maintain an action at law against the alleged employer for a money judgment, or the state may prosecute criminally for a wilful failure to contribute to the fund. O. C. L. A. 126-724 (a); Laws of 1937, p. 606, Chap. 398; O. C. L. A. 126-726, as amended, Laws of 1939, Chap. 516, § 1. The controversy is ripe for decision, there being no prerequisite intervening administrative action. In exercising its right to bring an action at law to collect delinquent contributions the commission would act only as any person would do in investigating a case and deciding to bring suit. The considerations which caused the court to refuse declaratory relief in the case of *Oregon Creamery Manufacturers Association v. White,* 159 Or. 99, 78 P. (2d) 572 (1938) do not appear in

this case. The declaratory judgment may be an appropriate alternative remedy preferable to criminal prosecution or an action at law for money, especially when, as here, it may settle many possible controversies in one proceeding.

However, although the court has power to weigh the evidence concerning freedom from control and declare the rights of the parties, there is a persuasive reason why, in the exercise of a sound discretion, the court should not determine that question in this case. The question comes here unweighted by any formal findings of the commission and if, upon examination of the evidence, it should appear that there is substantial evidence on both sides of the controversy, the conclusions reached would depend upon the court's opinion as to the weight and preponderance of the evidence. Having rendered judgment on that basis, we might be confronted by another case initiated, as in the Singer case, by a claim for unemployment benefits. The commission might have considered evidence identical to that presented here, involving possible conflicting inferences, and the commission might have arrived at a different conclusion. Upon appeal, if we found substantial evidence supporting the commission's findings, we might be compelled to uphold a decision diametrically opposed to our own upon identical facts. Even in such a case we would, of course, have the power and duty to review the administrative decision as to all questions of law, fraud, arbitrary action or other violation of constitutional right. But the statute would apply.

"* * * the findings of the commission as to the facts if supported by [substantial] evidence, in the absence of fraud, shall be conclusive * * *."
O. C. L. A. 126-711.

*Puget Sound Bridge & Dredging Co. v. State Unemployment Compensation Commission,* 168 Or. 614 at 625, 126 P. (2d) 37 (1942), and see similar rulings in workmen's compensation and unemployment compensation cases: *Gudmundson v. Cardillo,* 126 F. (2d) 521 (1941); *Messinger v. Lehigh Valley Railroad Co.,* 261 Pa. 336, 104 A. 623 (1918); *Oklahoma Pipe Line Co. v. Lindsey,* 113 Okla. 296, 241 P. 1092, Ann. Cas. 1918B, 703 (1925); *Dale v. Saunders Brothers,* 218 N. Y. 59, 112 N. E. 571 (1916); *Federal Mining & Smelting Co. v. Thomas,* 99 Okla. 24, 225 P. 967 (1924); *William Hill's Case,* 268 Mass. 491, 167 N. E. 914 (1929); *Murphy v. Shipley,* 200 Iowa 857, 205 N. W. 497 (1925); *Matter of Helfrick v. Dahlstrom Metallic Door Company,* 256 N. Y. 199, 176 N. E. 141, affirmed, 284 U. S. 594; *Hillen v. Industrial Accident Commission,* 199 Cal. 577, 250 P. 570 (1926); *York Junction Transfer & Storage Co. v. Industrial Commission,* 202 Cal. 517, 261 P. 704 (1927); *Index Mines Corporation v. Industrial Commission,* 82 Colo. 272, 259 P. 1036 (1927); *Andreas v. Bates* (Wash.) 128 P. (2d) 300 (1942); *Ocean Accident & Guarantee Corporation v. Wilson,* 36 Ga. App. 784, 138 S. E. 246 (1927); *People ex rel. Nelson v. Illinois Bank and Trust Company,* 290 Ill. App. 521, 8 N. E. (2nd) 953 (1937); *Cinofsky v. Industrial Comm.,* 290 Ill. 521, 125 N. E. 286; *Percy Churchill's Case,* 265 Mass. 177, 164 N. E. 68 (1928); *Craig v. Kansas State Labor Commissioner,* 154 Kans. 691, 121 P. (2d) 203 (1942); *Holloway v. Railroad Retirement Board,* 44 F. Supp. 59 (1942); *South v. Railroad Retirement Board,* 43 F. Supp. 911 (1942); Administrative Justice and the Supremacy of Law, by Johh Dickinson, pp. 258-261.

■ In the great majority of cases the decision will rest with the commission upon issues raised by the fil-

112

ing of a claim for benefits, and when the issue is so presented the showing of freedom from control must be made *to the satisfaction of the commission.* In such cases and where the facts are complicated, and conflicting inferences are possible, the courts may properly in their discretion decline to make the requested declaration. 16 Am. Jur. p. 294, § 20.

■ We find no such difficulty in acting upon the second phase of this case. The services of the salesman must be deemed to be employment unless it is shown to the satisfaction of the commission that the salesmen are *"customarily* engaged in an independently established business of the same nature as that involved in the contract of service." (Italics ours.) O. C. L. A. 126-702 (f) (E) (2).

An issue of law is presented. It is controlled by the decision in the Singer case. In that case, the authorities, concededly in conflict, were carefully reviewed, and the decision was deliberately made. We will not re-open the controversy.

■ The complaint alleges that each of said salesmen at all times has had a license from the real estate department of the State of Oregon entitling him to carry on business as a real estate salesman. The statute concerning real estate brokers and salesmen provides:

"* * * and no real estate salesman shall be employed by, or accept compensation from, any person other than the broker under whom he is at the time licensed." O. C. 1930, 63-712.

An identical provision is found in O. C. L. A. 59-501; Laws of 1939, p. 738, Chap. 380, § 16. A careful study of the testimony discloses that it has not been shown to the satisfaction of the commission, or at all, that any of the salesmen were customarily engaged in an

independently established business of the same nature as that involved in the contract of service. Under the last cited statute they could not be so engaged, and under the evidence they were not shown to have been. In fact the plaintiff affirmatively testified:

"All the salesmen now, they put in full time. They are not doing anything else."

■ Counsel for plaintiff again urge that the common law relation of master and servant, as developed in cases of tort, must be established before the employer can be declared subject to the act. The contrary was decided in the Singer case.

"We are of the opinion that the foregoing statutory definitions are controlling, although they differ from the meaning formerly attributed to the terms so defined."

And again,

"* * * the statute embraces other relations than merely master and servant as understood at common law." 167 Or. at 149, 176.

We conclude that the relationship between the plaintiff and appellant must be determined by statutory definitions, and that the definition in the Oregon compensation law is, as we have indicated, broader than the scope of the employer-employee relation or that of master and servant as those terms are known to the common law.

■ Again, it is urged that we should, in construing the state act, conform to an interpretation of the federal act said to have been adopted by the federal courts. The Singer case holds to the contrary. (167 Or. at 162).

■ The plaintiff very briefly and without the support of authority urges in his reply brief that li-

censed real estate salesmen build up individual clienteles and personal followings and may and sometimes do transfer their association from one broker to another. He urges that salesmen are privileged to have dealings and work with other brokers. Upon this fragile support he rests his conclusion that the salesmen are (not may be) customarily engaged in an independently established business. Even then it is not urged that the alleged independently established business is of the same nature as that involved in the contract of service. Upon this issue also the Singer case is persuasive if not controlling. In that case the court said:

> "* * * business arising only out of and on account of such contract is not 'independently established business'. Concededly, no other business was customarily or otherwise conducted by claimant in the instant case.
>
> "For these reasons, the writer thinks that the original opinion should not be overruled." (Opinion on rehearing, 167 Or. at p. 176.)

To exempt plaintiff and his salesmen from the act, the right (if there was one) to be independently engaged is not enough. The salesman must have been customarily engaged. The independent business must be of the same nature as that involved in the contract. In the case at bar, the only business the salesmen were doing was that which is authorized under the contract. The words "independently established business" mean a business established independently of and distinct from the business in which the salesmen are engaged under their contracts with the plaintiff. The words "of the same nature as that involved in the contract of service" refer to a business which is in character like another business, to-wit, that involved in the contract of service. To hold that salesmen, all

of whose customary work is pursuant to their contract with the plaintiff, are in an independently established business within the meaning of the statute would require us to hold that the "independently established business" is merely required to be of the same nature as, and to resemble *itself,* which is *reductio ad absurdum.*

In support of its position the plaintiff has cited *A. J. Meyer & Co. v. Unemployment Compensation Commission* 348 Mo. 147, 152 S. W. (2d) 184; *Fuller Brush Co. v. Industrial Commission of Utah,* 99 Utah 97, 104 P. (2d) 201, 129 A. L. R. 511; *Northwestern Mutual Life Insurance Company v. Joseph M. Tone,* 125 Conn. 183, 4 A. (2d) 640, 121 A. L. R. 993. Each of these cases received careful consideration in the Singer case and need not be further considered here. Other cases relied on by the plaintiff are: *In re Radio City Music Hall Corp.,* 262 App. Dir. 593, 31 N. Y. S. (2d) 284; *J. G. Leinbach Co., Inc., v. Unemployment Board of Review* 146 Pa. Super. 237, 22 A. (2d) 57; *Layman v. State Unemployment Compensation Commission,* 167 Or. 379, 117 P. (2d) 974, 136 A. L. R. 1468; and the recent case of *Guarantee Mortgage Co. of Nashville v. Bryant* (Tenn. Sup.) 168 S. W. (2d) 182, January 30, 1943. *Re Radio City Music Hall Corp.* (supra) is the decision of an intermediate New York court which holds that vaudeville entertainers under the particular provisions of their contracts were not entitled to unemployment insurance contributions under the New York statute. It deals only with the issue of alleged freedom from control and apparently applies the common law test in holding that the entertainers were independent contractors. Other decisions from the state of New York were considered by this court in the Singer

case, and it was intimated that the law of that state appears to be unsettled. The Radio City Music Hall case throws no light upon the issue which is determinative of the case at bar. In *J. G. Leinbach Co., Inc., v. Unemployment Board of Review* (supra) it was held that

> "A traveling salesman who is engaged to go about showing samples and taking orders for his firm, which passes upon credit of purchasers and which receives purchase money when and as paid, is generally regarded as an 'employee' within the Unemployment Compensation Act, and it is immaterial whether salesman is paid a salary, or commission, or whether he is furnished transportation by employer." 22 A. (2d) 57 (headnote 2.)

The decision is cited by the plaintiff because of a dictum to the effect that the case of traveling salesmen is to be distinguished from real estate and insurance brokers or agents. Apparently the court did not have in mind the case of real estate salesmen operating under statutory licensing provisions such as those which prevail in this state. Furthermore, the Pennsylvania Statute omits the words "of the same nature as that involved in the contract of service" which are found in the Oregon statute, supra.

In *Guarantee Mortgage Company of Nashville v. Bryant,* supra, the plaintiff brought suit to recover assessments paid under protest. The question was whether he was under the unemployment compensation act. The oral contract, so far as freedom from control is concerned, closely resembled the written contract in the case at bar. The plaintiff was a real estate broker, and the contract was with his three real estate salesmen. It was held that "the salesmen were not performing service for the complainant for

wages or under a contract of hire'' and that the unemployment compensation law did not apply to him, because, excluding his salesmen, he did not have the required number of employees. The Tennessee statute differs from our own in material particulars. The Tennessee statute defines ''employment'' as being ''service * * * performed for wages or under any contract of hire.'' The Oregon statute substitutes the word ''remuneration'' for the word ''wages.'' The Tennessee statute does not contain the words ''of the same nature as that involved in the contract of service'' which appear in the Oregon statute O. C. L. A. 126-702 (f) (E) (2), supra. The Tennessee court relied upon the case of *Fuller Brush Co. v. Industrial Commission* (supra) and *A. J. Meyer and Co. v. Unemployment Compensation Commission* (supra) which were considered in the Singer case. The Tennessee court held that the statute of that state should be strictly construed as a taxing statute, a proposition which was considered and rejected by this court in the Singer case. In view of the differences in the statutes of the two states, we are of the opinion that the Tennessee decision is not in point as an authority. Furthermore, although the Guarantee Mortgage Company case was decided after the Singer case, this court in the latter case recognizes that there was authority from the state of Tennessee which was contrary to its decision and rejected that authority.

Reference has been made to the recent case, *In Re Wilson Sullivan Co.*, 289 N. Y. 110, 44 N. E. (2d) 387 (1942). This case merits comment because it considers the effect of the license held by the real estate salesman. Counsel for the plaintiff asserts that the license statute applicable to real estate salesmen is the same

in New York as it is in Oregon. In this counsel is in error. The New York statute, as cited in the Wilson Sullivan case (supra) reads as follows:

> "No real estate salesman * * * shall receive or demand compensation from any person other than a duly licensed real estate broker regularly employing the salesman.

On the contrary, our statute provides

> "No real estate salesman shall * * * accept compensation from any person other than the broker under whom he is at the time licensed." O. C. 63-712, supra.

The New York court in the Wilson Sullivan case by a four to three decision committed itself as favoring the doctrine that the unemployment compensation law has adopted the common law rule concerning the distinction between an independent contractor and an employee. This doctrine has been definitely rejected in the Singer case. In the Wilson Sullivan case (supra) the court observed that the department of state has "seen fit to license the salesman Casey to work for more than one broker at the same time." Thus, it is possible that the salesman in the New York case might perhaps be engaged in an independently established business, unlike the salesman in the case at bar. The definition of "employment" in the New York statute differs materially from that contained in the Oregon statute.

The recent case of *Babb v. Huiet,* 67 Ga. App. 861, 21 S. E. (2d) 663 (1942) arose under a statute which is not identical with the Oregon act, but the decision lends support to the conclusions of this court, in that it refuses to adopt the common law test of master and servant as applying under the unemployment com-

pensation act. The court held that real estate salesmen come under the unemployment compensation act under facts similar to those in the case at bar. The Georgia court held that the salesmen would come under the act unless it was shown to the satisfaction of the commissioner conjunctively that the salesman was free from control and, among other things, was customarily engaged in an independently established trade, occupation, profession or business. It was found that the salesmen were not so independently engaged and therefore that the employer came under the act.

■ It is clear that the salesmen in the case at bar performed services for remuneration. The burden was therefore upon the plaintiff to prove that he comes within the exceptions provided in the act, O. C. L. A. 126-702 (f) (E). *In re Mid America Co.*, 31 F. Supp. 601 (1939); *Unemployment Compensation Commission v. Harvey,* 179 Va. 202, 18 S. E. (2d) 390 (1942); *Young v. Bureau of Unemployment Compensation,* 63 Ga. App. 130, 10 S. E. (2d) 412 (1940); *Industrial Commission v. Northwestern Mutual Life Ins. Co.,* 103 Colo. 550, 88 P. (2d) 560 (1939). The plaintiff has not only failed to sustain that burden, but has failed to present any substantial evidence that his salesmen were customarily engaged in an independently established business of the same nature as that involved in the contract of service. As strongly supporting our conclusions in the case at bar, see the recent case, *Singer Sewing Machine Co. v. Industrial Commission of Utah,* (Utah) 134 P. (2d) 479, decided February 19, 1943.

■ The plaintiff is subject to the provisions of the unemployment compensation law, and the decree of the circuit court is affirmed. Neither party shall recover costs.

ROSSMAN, J., (dissenting). I think that we ought to pass upon the issue as to whether or not the salesmen enjoy freedom from the plaintiff's control. That issue is one of serious consequence to the parties, and both ask in good faith for a decision upon it by this court. The facts are virtually free from dispute.

The majority decline to pass upon the issue just stated because the defendant has not entered findings upon that issue in a controverted matter, and because the statute says:

"The findings of the commission as to the facts if supported by evidence * * * shall be conclusive."

The issue as to whether or not the salesmen are subject to the plaintiff's control is one of the two issues determinative of the defendant's jurisdiction over the plaintiff. If a purported employer is subject to the commission's jurisdiction, then the commission can exercise great control over him. For instance, it can inspect his books, write rules which he must obey, summon him to hearings, remand him to the courts for the fixing of a penalty if he disregards its orders, and enter findings of fact that even a court cannot disregard if they are supported by evidence. But the plaintiff challenges the defendant's jurisdiction and claims that he is not under the act. *Crowell v. Benson*, 285 U. S. 22, 76 L. Ed. 598, 52 S. Ct. 285, holds that when an administrative agency's jurisdiction is challenged, the courts must arrive at their own conclusions upon the jurisdictional facts independent of the findings made by the administrative body. That decision stands unreversed. We are bound by it.

I dissent.