Argued November 2, 1970, reversed and remanded March 3, 1971

GOLDEN SHEAR BARBER SHOP ET AL, *Petitioner,*
*v.* MORGAN, *Respondent.*

481 P2d 624

*Robert L. McKee,* Portland, argued the cause for petitioner. On the brief was Allen L. Fallgren, Portland.

*E. Nordyke,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, Jacob B. Tanzer, Solicitor General, and Alan H. Johansen, Assistant Attorney General, Salem.

Before O'CONNELL,* Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

BRYSON, J.

This court accepted review of a decision of the Court of Appeals holding that Jerry Harris, one of three individuals doing business as the Golden Shear Barber Shop, was the employer of John F. Olsen, an apprentice barber, "for the purposes of the Unemployment Insurance Law." The opinion of the Court of Appeals appears at 90 Adv Sh 1789. It affirmed a decree of the Circuit Court for Multnomah County, entered in a judicial review proceeding authorized by the Employment Division Law, affirming a referee's decision after an administrative hearing.

The original "Notice of Determination" of the Department of Employment found that John E. Hickox, Gary Schultz, and Jerry Harris, each a registered barber doing business as Golden Shear Barber Shop, were the employers of one John F. Olsen, an apprentice barber, and imposed liability on the three registered barbers for unemployment insurance taxes covering Olsen. Their application for a hearing, pursuant to ORS 657.679, was granted and the original determination was modified by order of June 2, 1969

---

* O'Connell, C. J., did not participate in the decision of this case.

to exclude Hickox and Schultz but affirmed as to Harris, the petitioner before this court, as the "employing unit."

The single point relied upon for reversal of the decree of the Court of Appeals is that the court erred in finding that an employer-employee relationship existed between Olsen, the apprentice barber, and Harris, the "employing unit." The referee's findings are not disputed and are binding upon the reviewing court if supported by evidence and in the absence of fraud.[1] ORS 657.683 (10).[2]

---

[1] "1. John E. Hickox, Gary Schultz, Jerry Harris and John F. Olsen began practicing the trade of barbering on the premises at 2627 N.E. Broadway, in Portland, Oregon, on May 23, 1963. 2. They have named the premises the Golden Shear Barber Shop, hereinafter called Shop. 3. John E. Hickox, Gary Schultz, and Jerry Harris entered into a five-year written lease of the premises (Exhibit No. 5). 4. Each of these three men furnished funds to alter the premises for their purposes and to obtain necessary barber chairs and other equipment. 5. John F. Olsen did not furnish any of the initial funds. 6. Each of the four individuals pay $35.00 a week into a fund to be used for operating the Shop, paying the rent, utilities such as heat, light, water, telephone, and to purchase any further equipment or provide for additional alterations, as needed. 7. This latter fund is in the keeping or care of John E. Hickox. 8. John F. Olsen was, and still is, an apprentice barber. 9. Hickox, Schultz, and Harris are master barbers. 10. In the second calendar quarter of 1968 (the quarter ending June 30, 1968) John F. Olsen had earnings of $459.00 from his barbering service in the shop.

"11. The Shop license is in the names of John E. Hickox, Gary Schultz, and Jerry Harris. 12. The annual fee for the Shop license is paid from the fund described in Finding No. 6. 13. Each of the barbers has a city license which he pays for as an individual. 14. The Shop is partitioned off into individual booths occupied by a single barber (see Exhibit No. 4). 15. In each booth the barber has a chair, a telephone instrument, his own hand tools, and his cash box. 16. The barbers work on an appointment basis, each with his own clientel. [sic] 17. The Shop has two phone lines. 18. When a call comes in, any one of the barbers may answer, and then direct the call to the instrument of the barber wanted. 19. The Shop front door is the only locked door in the establishment, and each barber has a key to the lock. 20. Each

However, the issue here is one of law, that is, whether the findings of the referee support the proposition that the relationship is one of employment as defined by the applicable statutes.

Of the three registered barbers, only Harris signed as Master Barber on Olsen's application for journeyman barber rating. The referee held that Olsen was employed by Harris because as an apprentice he was required by statute to practice only under the supervision of a registered barber (ORS 690.030 (1)); reasoning that since Harris had signed Olsen's journeyman application as his supervising barber, he could not show that Olsen had been and would continue to

---

barber purchases his own individual supplies separately, and keeps his own receipts and accounts. 21. Each comes and goes from the Shop as he pleases, keeps his own hours, and charges his own set of prices for services. 22. A new barber beginning his services in the Shop is required to agree to pay his $35.00 a week into the fund for expenses. 23. The fund is banked and accounted for by John E. Hickox, who makes out checks for any Shop expenses, or alterations and additions agreed to by the barbers. 24. Mr. Hickox makes a yearly accounting to the other barbers of expenditures made from the fund, and each barber files his own individual income tax return; no partnership or other return is made for the group. 25. Any barber is free to leave the group at will, and may either sell his interest to the others or to someone outside the present group. 26. Jerry Harris signed as Master Barber on John F. Olsen's application for journeyman barber rating."

② "ORS 657.683 (10). In any judicial review under this section the findings of fact of the referee if supported by evidence in the absence of fraud are conclusive and binding upon the court and the jurisdiction of the court shall be confined to questions of law. No additional evidence shall be received by the court but the court may order additional evidence to be taken before the referee. The referee may, after hearing such additional evidence, modify his decision and file such modified decision, together with a transcript of the additional record, with the court. Proceedings under this section shall be heard by the court without a jury and in a summary manner * * *."

be free from Harris's control and supervision, as provided in ORS 657.040:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the administrator that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2) (a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service; or

"(b) Such individual holds himself out as a contractor and employs one or more individuals to assist in the actual performance of services and who meets the following criteria shall be deemed to have an independently established business:

"* * * * *."

The details of the agreement between the three registered barbers and the apprentice are set forth in the findings of the referee. (See footnote 1.)

The decision of the Court of Appeals, however, rests on a different ground from that of the referee. Relying on *Unemp. Compensation Com. v. Brown*, 225 Or 306, 358 P2d 502 (1960), the court held that the arrangement under which Olsen worked would have constituted "employment" even if Olsen had been a registered barber instead of an apprentice.

In *Brown*, which was an action to collect unpaid payroll contributions, the defendant was the owner of a three-chair barber shop. He operated one of the chairs personally and, by an oral lease arrangement, permitted two other barbers to operate the other chairs. The court held that for unemployment insur-

ance purposes, Brown was an employer as a matter of law. Also, the court held, at page 309:

"It is conceded that * * * he [Brown] would be liable for the amounts prayed for in the complaint unless he is *exempt* from the Act's provisions * * *." (Emphasis added)

The existence of an employer-employee relationship between Brown and his lessee barbers was not challenged.[9]

The details of the arrangement between Brown and the other barbers differ from those in the present case. Instead of a flat amount paid periodically, each barber daily paid Brown 25% of what he had taken in during the day. Brown himself paid for equipment, utilities, insurance, etc., and purchased all the supplies for the shop. He did not account to the others for any excess in the amounts collected from them over the expenses of operating the shop. Prices were posted in the shop, and all the barbers charged uniform prices for their services. Each barber cared for members of the general public as well as for his own customers.

Petitioner argued, in the Court of Appeals and in his petition to this court, that the facts do not support a conclusion that Olsen performed services for

---

[9] For clarity, it should be noted that the concession mentioned by the court in *Brown* includes not only Brown's failure to make the required reports to the Commission, but also Brown's liability for the unpaid contributions should he fail to prove his *exemption* under ORS 657.040. The latter concession resulted from Brown's procedure on appeal to this court. His appeal proceeded on the basis of his contention that the requisites for exemption under ORS 657.040 had been established at the trial; he did not contest any conclusion that an employer-employee relationship existed between him and his lessee barbers. *See* Appellant's Abstract of Record and Brief, 1635 Oregon Briefs (1961), § 306 at 11-17.

Harris. The relevant sections of Chapter 657, Employment Division Law, are as follows:

"657.015 Employe. * * * 'employe' means any person * * * employed for remuneration or under any contract of hire * * * by an employer subject to this chapter in an employment subject to this chapter."

"657.020. Employing unit. * * * 'employing unit' means any individual or type of organization * * * who has, or subsequent to January 1, 1937, had in its employ one or more individuals performing services for it within this state * * *.

"* * * * * *"

"657.025 Employer. (1) * * * 'employer' means any employing unit which after December 31, 1959, employs one or more individuals in an employment subject to this chapter during any calendar quarter in which its total payroll amounts to $225 or more * * *

"* * * * * *"

"657.030 Employment; generally. * * * subject to * * * [657.040, among others] 'employment' means service for an employer * * * performed for remuneration or under any contract of hire * * *"

Under these statutes, only services performed for an employer for remuneration can constitute employment. Until these elements are established, the question of "control" under ORS 657.040 (1) need not be reached. Several cases decided by this court have recognized that these are the steps in determining whether an employment relationship exists under the unemployment insurance laws. *Rahoutis v. Unemployment Commission*, 171 Or 93, 119, 136 P2d 426 (1943):

"It is clear that the salesmen in the case at bar performed services for remuneration. The burden

was therefore upon the plaintiff to prove that he comes within the exceptions provided in the act; * * * ."

*Journal Pub. Co. v. State U. C. Com.*, 175 Or 627, 635, 155 P2d 570 (1945):

"* * * The Rahoutis case is also authority for the proposition (which follows from the plain terms of the law) that, once it is shown that the individual has performed services for remuneration for an employer, the burden is cast upon the one who claims that such individual is not under the act to satisfy the commission that he comes within the exceptions provided in § 126-702 (f), (E), O.C.L.A. (171 Or 119)."

*Kirkpatrick v. Peet*, 247 Or 204, 213, 428 P2d 405, 409 (1967):

"* * * The facts clearly establish that the dealers were employed by plaintiff to perform services for which they received remuneration. Therefore, plaintiff had the burden prescribed by ORS 657.040 to show that those he employed were free from control or direction over the performance of the services and that they customarily are engaged in an independently established business of the same nature as that involved in the contract of service."

■ Under the facts as found by the referee, it does not appear that Olsen performed any services for Harris. The amount of business done by Olsen made no difference to Harris's income or the volume of his business. Olsen did not bring Harris new customers and did not serve Harris's own customers. None of the barbers, including Harris, could profit from the contributions Olsen made to the common fund; Hickox accounted to all the others, including Olsen, for any excess in the fund over operating expenses. These

facts do not disclose an employment relationship, but a bona fide space-sharing arrangement, the same as the referee found to exist between Harris, Hickox, and Schultz.

■ We must next decide whether the statutes regulating barbers and barber shops can have the effect of conclusively turning this relationship into one of employer-employee. ORS 690.030 (1) provides:

"No registered apprentice may independently practice barbering, but he may, as an apprentice, do any or all of the acts constituting the practice of barbering under the immediate personal supervision of a registered barber. Only one such apprentice shall be employed in any licensed shop. "* * * * * *"

The Commissioner has not argued that the word "employed" in the last sentence has any special significance which applies to the unemployment insurance situation. He has argued instead that because Olsen would be in violation of this section if he practiced barbering without the supervision of a barber, and because Harris acted as his supervising barber, then Harris must have been his employer.

However, we hold that the above statute is not relevant unless and until the question of "control" under ORS 657.040 is reached. It does not shed any light on whether an apprentice barber does in fact render services for his supervising barber, or whether those services are rendered for remuneration or under a contract of hire. These questions can only be determined by the facts of each case.

In *Unemp. Compensation Com. v. Brown, supra* at 312, this court did give some weight to the statutes regulating barbers:

"* * * [Brown] retained considerable control

over the employees' actions and work. It could hardly be said that there were three distinct and independent businesses conducted under the general name of 'Brown's Barber Shop.' If that were the case, they certainly would not be complying with ORS 690 regulating barber shops."

This paragraph apparently has reference to ORS 690.020, which provides:

"No person shall:

"* * * * *.

"(3) Operate a barber shop unless it is at all times under the direct supervision and management of a registered barber.

"* * * * *"

The court, in *Brown*, also looked to the facts of the arrangement among the barbers in that case, so it is clear that it did not regard this statute, without more, as controlling. It can hardly be argued that the statute regulating barbers should be applied directly to the unemployment insurance field to mean that whenever two barbers operate in the same shop, regardless of the factual relationship between them, one *must* be the employer of the other for unemployment tax purposes. In the present case, for instance, two registered barbers besides Harris signed the lease for the shop and contributed to the original capital. Under the terms of the operating agreement, they were clearly not Harris's employees. The referee singled out Harris as Olsen's employer because he signed as Master Barber on Olsen's application for journeyman's barber rating and not because he was in charge of the shop.

A number of cases from other jurisdictions have considered leasing and space-sharing arrangements in barber and beauty shops; the details of the arrange-

ments have, of course, varied in each case. *See* Annotation, 164 ALR 1411, 1425 for cases.

The judgment of the Court of Appeals affirming the decree of the circuit court to the effect that Jerry Harris, doing business as Golden Shear Barber Shop, is an employer within the meaning of the Employment Division Law, is hereby reversed and the cause remanded to the circuit court to enter a decree in accordance with this opinion. Pursuant to ORS 657.683 (11), petitioner is allowed his costs on appeal.[4]

Reversed and remanded.

---

[4] ORS 657.683 (11) "An appeal may be taken from the judgment of the circuit court to the Supreme Court as in other cases, regardless of the monetary amount involved. The cost of judicial proceedings under this section shall be taxed against the unsuccessful party."