Argued August 22, affirmed September 28, 1972

# PETROL STOPS NORTHWEST, *Petitioner, v.* MORGAN, *Respondent.*

501 P2d 341

*Jerry W. Hendricks,* Eugene, argued the cause for petitioner. With him on the brief were Luvaas, Cobb, Richards & Frazer, and Paul D. Clayton, Eugene.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

This is an unemployment insurance appeal. Plaintiff, Petrol Stops Northwest, appeals from the determination of the Employment Division, upheld after hearing by a referee, finding Petrol Stops to be an "employer" subject to the Unemployment Insurance Act, ORS ch 657.

■ This court has initial judicial review of this contested case. ORS 183.480. On appeal the amount of tax assessed against plaintiff pursuant to the Act is not at issue. Rather, plaintiff claims that it is not an "employer" subject to the Act, and, alternatively, plaintiff questions the constitutionality of ORS 657.040① as applied to it.

---

① ORS 657.040:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the administrator that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2)(a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service; or

"(b) Such individual holds himself out as a contractor and employs one or more individuals to assist in the actual performance of services and who meets the following criteria shall be deemed to have an independently established business:

"(A) The individual customarily has two or more effective contracts.

"(B) The individual as a normal business practice utilizes separate telephone service, business cards and engages in such commercial advertising as is customary in operating similar businesses.

"(C) The individual is recognized by the Department of Revenue as an employer.

"(D) The individual furnishes substantially all of the equipment, tools and supplies necessary in carrying out his contractual obligations to his clients."

Plaintiff, Petrol Stops, owns a chain of gasoline service stations in this state. Plaintiff engages station managers, under written agreement, to dispense gasoline at the stations and to handle daily operation. Petrol Stops contends that these station managers are not its employes.

The details of the contractual, and factual, relationship between Petrol Stops and its station managers may be summarized as follows: Petrol Stops owns or leases all of its stations in the state. Plaintiff also owns the gasoline-related equipment at the stations, such as the gas pumps. Plaintiff provides supplies necessary to the gasoline business, including windshield cleaning materials, and is responsible for utility bills. Petrol Stops carries over-all public liability insurance on the stations. Plaintiff also sets gasoline prices, and, by the written agreements, determines standards of merchandising and advertising. Through its area manager, plaintiff usually visits each station at least once per week. Service station hours are established in the written agreement signed by all station managers. Plaintiff can terminate the agreement either on 30-days' notice, or without notice if the manager fails in his prescribed duties under the agreement.

The station managers may sell no gasoline other than that provided by Petrol Stops. However, other services and products, such as oil changes and soft drinks, may be sold by the managers, absent interference with the business of dispensing plaintiff's gasoline. The only equipment and supplies owned by the managers at the stations are those related to these incidental services. Managers retain all income from these non-gasoline related services, and do not account to Petrol Stops for these amounts. However, under the

agreements, the managers daily bank the receipts from the gasoline pumps, retaining only some portion of their "contract price" set in the agreements. If the receipts are less than the total indicated on the gasoline pumps, then the station manager is responsible for the discrepancy. Managers may hire their own "helpers" to assist at the stations. Petrol Stops has little control over these "helpers" having no power to hire or fire them. The managers set wages and conditions of employment for their "helpers" and pay tax withholding on them.

Petrol Stops used two different written agreements with its station managers during the period involved in this case. One provided for what the area manager termed a "profit-sharing situation." Under this agreement the manager received a set amount per month plus one-half of the net profit for the month. Apparently, if the station had suffered a loss, the manager, under this agreement, also would have been responsible for one-half of the loss, although the area manager testified, "* * * why of course you couldn't hold a guy to it * * *."

The second agreement, which plaintiff adopted after it began to lose both money and managers, provided for a set amount of payment per month only, with no possibility of risk of loss for the managers. Almost all of plaintiff's managers now work under this agreement.

Some managers, perhaps under plaintiff's prompting, felt themselves to be self-employed, and did not view their relationship with plaintiff as that of employer-employe. Others apparently disagreed with this characterization.

On these facts, the plaintiff contends that no suf-

ficient evidence supports the finding that an employment relationship exists between Petrol Stops and its station managers. The plaintiff also asserts that the referee used an improper analysis in determining that plaintiff is an employer.

■ The referee, in deciding that plaintiff is an employer, looked first to ORS 657.030 which defines "employment" as "service for an employer * * * performed for remuneration * * *." Finding these terms to be satisfied by the evidence, the referee then considered ORS 657.040, set out in n 1, supra.

This is the proper analysis, and the referee clearly followed it. *Golden Shear Barber Shop v. Morgan,* 258 Or 105, 481 P2d 624 (1971); *Kirkpatrick v. Peet,* 247 Or 204, 428 P2d 405 (1967).

Plaintiff, however, then asserts that, in fact, the provisions of ORS 657.030 were not satisfied, and that here no services were performed for an employer for remuneration.

Under ORS 657.030, "* * * the question of whether certain facts are sufficient to support an administrative finding that a certain legal relationship exists is a question of law which the court itself must decide." *Kirkpatrick v. Peet,* supra, 247 Or at 211; *Golden Shear Barber Shop v. Morgan,* supra.

Traditionally, the terms "service" and "remuneration" contained in ORS 657.030 have received a broad construction, designed to effectuate the remedial purposes of the Unemployment Insurance Act. *Journal Pub. Co. v. State U. C. Com.,* 175 Or 627, 155 P2d 570 (1945); *Kirkpatrick v. Peet,* supra. The courts have not attempted an exact delineation of either term, for, as the Supreme Court said in the *Journal* case, "* * *

it would be impracticable, in our opinion, to attempt a definition by which to test every case that may arise * * *." 175 Or at 636.

■ Here, the facts seem to fall rather clearly within the ambit of "service" and "remuneration." The plaintiff set the operating hours and gas prices at its stations. It provided the property, equipment and supplies for the gasoline business. Petrol Stops controlled the advertising, merchandising and general operation of the station. Most station managers were paid a set amount per month, with only some receiving part of their payment on a "profit-sharing" basis. Thus, this case is distinguishable from the "bona fide space-sharing arrangement" found not to constitute employment in *Golden Shear*.

In accordance, then, with the liberal construction of the Act, the station managers here performed services for remuneration, and Petrol Stops is an employer within the meaning of ORS 657.030.

■ Yet, the plaintiff claims that legislative exemptions from the Act have altered its purpose, and that a liberal, broad construction is no longer proper. Plaintiff refers to such exemptions as those for agricultural labor (ORS 657.045), for news delivery service (ORS 657.080), and for home improvement solicitors (ORS 657.087).

Most of these exemptions refer to certain types of occupations, sometimes partially defining the scope of the exemption by looking to the method of payment. Plaintiff has not pointed to any specific indication that the legislature, through these statutory exemptions, intended to alter the underlying purpose and construction of the Act. Such a basic change in legis-

lative intent is not to be so lightly inferred. *See, Dick v. Morgan,* 2 Or App 437, 468 P2d 544 (1970).

Plaintiff's contention is without merit, and Petrol Stops is an employer as defined in ORS 657.030.

The referee found, and plaintiff does not now deny, that plaintiff did not meet the general exemption from the Act set out in ORS 657.040. However, plaintiff asserts that this statute, as applied to it, is unconstitutional.

Again, plaintiff's argument is grounded in the exemptions from the Act. The plaintiff claims that these exemptions create arbitrary distinctions between classes of employers and thus offend the equal protection provision of Oregon Constitution, Art I, § 20.[8]

Apparently, plaintiff's contention is that several of the exemptions, for example, ORS 657.080, 657.085, 657.087 and 657.090,[9] are based on method of payment, specifically payment on commission. Plaintiff then argues either that such a method of exemption is unconstitutional, or that it also employed its managers on commission. Plaintiff asserts that if it pays on commission, and other employers are exempted on that basis, that to then apply ORS 657.040 to plaintiff creates unconstitutional discrimination between classes.

Although several of the statutes listed above partially define their scope through reference to the pay-

---

[8] Oregon Constitution, Art I, § 20:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

[9] ORS 657.080 applies to news delivery service, ORS 657.085 to real estate, insurance and securities agents, ORS 657.087 to home improvement solicitors, and ORS 657.090 to wholesale petroleum products distributors.

ment method, still the statutes do not recite that commission payment is the reason for exemption.

Even if the exemptions were based only on payment method associated with certain occupations, this would not necessarily establish a constitutional defect.

"* * * [A] classification having some reasonable basis does not offend the Federal Constitution or the Constitution of this state merely because it is not made with mathematical nicety or because in practice it results in some inequality * * *." *Mallatt v. Luihn et al,* 206 Or 678, 702, 294 P2d 871 (1956); *Plummer v. Donald M. Drake Co.,* 212 Or 430, 320 P2d 245 (1958).

■ ■ The plaintiff, since it attacks the reasonableness of the exemptions, has the burden of demonstrating that the classifications established are unconstitutional. *Croft et al v. Lambert,* 228 Or 76, 357 P2d 513 (1961); *Flamingo Motel v. Port of Portland,* 9 Or App 599, 497 P2d 673, Sup Ct *review denied* (1972). Plaintiff has failed to sustain this burden.

Plaintiff maintains, in effect, that it pays on commission. The evidence does not support this contention, except, perhaps, as to "profit-sharing" payments made under the first of plaintiff's written agreements.

However, even assuming that plaintiff did pay on commission, this would not automatically exempt plaintiff, or render the application of ORS 657.040 unconstitutional.

Again, plaintiff has not shown that the exemptions are based only on payment method, or that the classifications which they establish are arbitrary and unreasonable. In fact, plaintiff seems to ask this court

for a special exemption. "However, such exemption must come by legislative action as has been done for certain other occupations." *Dick v. Morgan,* supra, 2 Or App at 440; *Union Avenue Club v. Peet,* 249 Or 135, 437 P2d 730 (1968).

The decision of the referee, finding plaintiff, Petrol Stops, to be an employer, is affirmed.