Guaranty Mortgage Co. of Nashville *v.* Bryant *et al.*

(*Nashville,* December Term, 1942.)

Opinion filed January 30, 1943.

580

CHARLES G. NEESE, of Paris, CHARLES L. HAILE, of Nashville, and HAMMOND FOWLER, of Rockwood, for appellants.

EUGENE T. HOLLINS, JR., and COCHRAN & WHITE, all of Nashville, for appellee.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

Defendants classified complainant as an "employer," within the meaning of the Tennessee Unemployment Compensation Act, Michie's Tenn. Code, 1938, section 6901 (1) et seq., and assessed it as such in the amount of $312.57, which complainant paid under protect. Thereafter complainant filed its original bill herein and averred that it was not liable for any assessment, because it did not come under the Unemployment Compensation Act, not having the requisite number of employees, and sought a judgment for the amount paid.

The chancellor granted the relief sought, and defendants have appealed to this court and assigned errors.

Complainant is a corporation engaged in the business of real estate broker, in and around Nashville, Tennessee. The question for determination is whether three real estate salesmen working out of the office of complainant performed services for complainant for wages or under a contract of hire so as to constitute complainant an "employer" within the purview of the Unemployment Compensation Act. If the three salesmen were not in the "employment" of complainant, then it had less than eight employees, and was not subject to the Act.

Section 19(f) (1) of the Unemployment Compensation Law defines "employer" as follows: "(1) Any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, within either the current or the preceding calendar year, has or had in employment, eight or more individuals (irrespective of whether the same individuals are or were employed in each such day)."

Section 19(g) (1) is as follows: "(1) Subject to the other provisions of this subsection, 'employment' means service, including service in interstate commerce performed for wages or under any contract of hire, written or oral, express or implied."

Section 19(g) (6) is as follows:

"(6) Services performed by an individual for wages shall be deemed to be employment subject to this Act unless and until it is shown to the satisfaction of the commissioner that:

"(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C) Such individual is customarily engaged in an independently established trade, occupation, profession or business."

Section 19(m), so far as material here, provides: "(m)

'Wages' means all remuneration payable for personal services, including commissions.''

In *Fuller Brush Co.* v. *Industrial Commission*, 99 Utah, 97, 104 P. (2d), 201, 202, 129 A. L. R., 511, the court in construing provisions of the Utah Unemployment Compensation Act, substantially the same as provisions of the Tennessee Act above quoted, said, *inter alia*: "But these three factors are not given for the purpose of determining whether a certain labor performed or service rendered, comes within the term 'employment' as used in the act, nor for determining whether such labor or service is performed for 'wages' as used in the act. Subhead 5 applies only to cases, where it has been previously determined, where the work or service comes within the term 'employment' as defined in the act, and that it was performed for 'wages or under a contract of hire.' Until it has been so determined subhead 5 has no application. These conditions indicate a legislative intent to make an exception, to eliminate from the operation of the act certain kinds of personal service in private industry rendered for wages, but which could not well be defined by a single work or class designation like those in subdivision 6.''

Then follows, in the *Utah Case*, illustrations where one might render service to another, but will not be in employment under the Act.

In *A. J. Meyer & Co.* v. *Unemployment Compensation Commission*, 348 Mo. 147, 152 S. W. (2d), 184, 192, the court set forth the above quotation from the *Utah Case*, and said, "We think that the Utah construction is sound and we approve it." The same language as was employed by the Utah court, above quoted, appears in the opinion of this court in *Texas Company* v. *Bryant, Com'r*, 152 S. W. (2d), 627, 178 Tenn., 1, at page 10.

Unless, under the facts of the case, the three real estate salesmen performed service for complainant for "wages or under a contract of hire," the exclusionary tests of section 19(g) 6, (A), (B) and (C) of the Act are inapplicable. *Texas Co.* v. *Bryant, supra; Meyers & Co.* v. *Unemployment Compensation Commission, supra; Fuller Brush Co.* v. *Industrial Commission, supra.*

Complainant was a duly licensed real estate broker. The three salesmen were duly licensed real estate salesmen. It was deemed to the mutual advantage of the complainant and salesmen to make the following arrangement: Complainant agreed to make available to the salesmen all current listings of the office, except those it was deemed expedient to place exclusively in the possession of some other salesman, and agreed to assist the salesmen in their work by advice, instruction and cooperation in every way possible; that the salesmen might share with other salesmen such facilities as the office might be able to furnish. The salesmen agreed to work diligently to sell, lease or rent any and all real estate listed with complainant, and otherwise promote the business of serving the public in real estate transactions and to conduct their business and regulate their habits so as to maintain the good will and reputation of complainant. It was further agreed that when a salesman performed any service whereby a commission was earned, such commission, when collected, to be divided between complainant and the salesman, the salesman to receive 50 percent and the complainant the balance; that in the event of special arrangements with any client, or property of complainant was listed, a special rate of commission might apply, such rate to be agreed upon by complainant and the salesman; that in no case should complainant be liable to the salesman for any commission unless the same

had been collected from the party for whom the service was performed.

It was further agreed that complainant was not to be liable to the salesman for any expense incurred by him, or for any of his acts, and the salesman was not to be liable to complainant for office help or expense, and salesman should have no authority to bind the complainant by any promise or representation, unless specifically authorized to do so in a particular transaction; that expenses for attorney's fees, abstracts and the like which might by some reason of necessity be paid from the commission, or incurred in the collection of the commission, was to be paid by the parties in the same proportion as provided for in the division of the commission; that suits for commission should be maintained only in the name of complainant; that the salesman was to be construed to be a subagent only with respect to the clients and customers for whom services were performed; otherwise be deemed to be independent contractor, and not a servant, employee, joint adventurer or partner of complainant. The agreement could be terminated by either party, at any time, upon notice, but the right to accrued commissions should not be divested.

There was no written contract between complainant and the salesman. It was agreed, however, that the above fairly represented the agreement between the parties.

The salesman, Andrews, in giving a short statement of the agreement, testified as follows: "Well, when I first went down to the Guaranty Mortgage Company, I went in there with this understanding; that I should buy my own license, pay for my own bond, use my own automobile and pay for the oil and gas, and they could close the sales for 50 percent. They should furnish a desk and telephone and stenographers."

The salesman, Knoch, testified: "Well, my contract, the first day I met Mr. Greer was the day I went to work. I wanted to go out and try to sell real estate and list houses, I wanted to list houses and wanted to sell them. And in doing that I was to pay all my own expenses, furnish the real estate license, my car, and in return for my services, he would furnish the office and my advertising. And that is the way, in other words, when I make a sale, well, I get fifty percent of it and if I don't make a sale, I don't get anything."

The salesman, Anderson, testified substantially to like effect.

The evidence shows that salesmen may and occasionally do sell property listed with some other real estate broker; that the salesmen are not restricted to the business of selling real estate; they are not required to give their whole time to selling real estate; they may have other regular jobs; they keep no regular office hours; they are not required to call on any prospective buyer, nor to make reports of calls, or report their activities. A salesman may list his name under the complainant's telephone number, but if he does so he pays the cost of listing his name. On advertisements, paid for by complainant, both the name of the salesman and complainant appear. Complainant gives no orders to the salesmen. The instruction given them consists of information as to the amount of the loan, if any, upon the property, where the listing is that of complainant rather than that of the salesman, the price the owner asks for the property, the amount of cash payment necessary, and such other general information as it has.

Can it be successfully maintained that under the facts these salesmen performed service for complainant for "wages or under a contract of hire?" We think

not. The arrangement between the parties amounted to nothing more than that the salesmen were furnished free office space, telephone, etc., for which complainant received one-half the commission earned and actually collected on sales made by the salesmen, complainant closing the deals. Commissions were not paid by complainant, but by the parties to the sale. Complainant did not pay, or promise to pay, any wages or commissions to the salesmen. The situation was that the salesmen paid one-half of commissions earned by them, to complainant, rather than that complainant was paying them commissions.

■ Our conclusion from the evidence is that the three salesmen were not performing service for complainant for wages or under a contract of hire. This being true, the Unemployment Compensation Law does not apply to complainant, because it has less than eight employees. The Act in question is a taxing statute, and hence is subject to the rule that tax laws must be construed strictly against the taxing authority. *Meyer & Co.* v. *Unemployment Compensation Commission, supra*. We find no merit in the assignments of error. The result is that the decree of the chancellor is affirmed. Appellants will pay the costs of the appeal.