REALTY MORTGAGE & SALES CO. v. OKLAHOMA EMPLOYMENT SECURITY COM. et al.

No. 31378. Oct. 16, 1945.

Rehearing Denied Jan. 15, 1946.

Application for Leave to File Second Petition for Rehearing Denied June 25, 1946.

*169 P. 2d 761.*

A. K. Little, of Oklahoma City, for plaintiff in error.

Burton Duncan and Mark L. Neumann, both of Oklahoma City, for defendants in error.

OSBORN, J. This action was commenced on July 11, 1940, by the plaintiff, Realty Mortgage & Sales Company, a corporation, against W. A. Pat Murphy, Commissioner of Labor of the State of Oklahoma, and Carl B. Sebring, State Treasurer, to recover payments or contributions made to the Oklahoma Unemployment Compensation Fund from January 1, 1937, to December 31, 1938. The parties will be referred to as they appeared in trial court. The contributions so sought to be recovered were made under protest for certain real estate salesmen who were classified as employees of the plaintiff by the Labor Commissioner. On application of the Oklahoma Employment Security Commission, it was made a party defendant in lieu of the Commissioner of Labor. When the case came on for trial, both parties waived a jury, the cause was tried to the court, and judgment rendered denying the relief prayed for by the plaintiff. Plaintiff appeals.

The essential facts are undisputed and were fully established by the evidence introduced in the trial court. From that evidence it appears that plaintiff is a real estate broker, having its own office and employing certain persons whose status is not questioned in this action. It is engaged in the real estate and loan business. In addition to its regular employees, it has associated with it certain salesmen whose status is in question here. All operate under a similar agreement, which is oral.

The terms of the arrangement between plaintiff and the salesmen are substantially as follows: The salesmen are privileged to use the office of plaintiff, including telephones and desks when not in use; they have access to the office listings of properties for sale, and at times are furnished with the names of prospective borrowers or purchasers. They are under no obligation to follow any lead given them by plaintiff, or to sell only properties listed with plaintiff, but are free to pursue any lead, or to sell any properties, which come to their attention. They have no office hours, make no reports, pay their own expenses, furnish their own cars, and work when they please. Information regarding properties, and forms to be executed when a sale or loan is effected, are furnished by plaintiff or may be procured elsewhere by the salesmen. Everything else is furnished by the salesmen. Sales meetings are held occasionally, but there is no obligation to attend them. When a contract for a sale is procured by a salesman it is usually taken in the name of plaintiff and delivered to plaintiff's office, and plaintiff closes the deal and collects the commission. On loans the application is on forms furnished by the lender. The commissions are usually divided 50 per cent to the salesman and 50 per cent to plaintiff, and salesmen are paid their portion as soon as, but not until, the commission is collected. Salesmen may engage in other business if they wish; they may close deals if they wish; but on all sales plaintiff is entitled to its share of the commission collected. Either plaintiff or the salesmen may terminate their relationship at any time, and, in the event of termination, the salesman is entitled to his part of commissions earned by him and thereafter collected. Most of the salesmen were engaged in the real estate business before they associated themselves with plaintiff. Their only remuneration is their portion of commissions earned by them. They have no drawing account or other advance of any kind. Plaintiff carries liability insurance on the salesmen's cars to protect itself from any contingent liability, and includes them in its Workmen's Compensation Insurance because of the requirement by the insurance company

that all persons connected with plaintiff's business in any way be included in the policy.

The parties agree that the plaintiff's cause of action accrued while the Oklahoma Unemployment Compensation Law of 1936, Session Laws of 1936, Extra Sess. c. 52, p. 30, was in force, and that that act is the applicable law.

Section 2 of the act states the public policy of the state to be the cushioning against involuntary unemployment by providing for an unemployment compensation fund to be used for the benefit of persons unemployed through no fault of their own. In the following sections it provides for payments of benefits to those who are subject to involuntary unemployment computed upon a percentage of their full-time or part-time weekly wages, and provides for contributions from employers based on their annual pay rolls. It defines annual pay rolls as the total amount of wages payable by an employer for employment during a calendar year, defines an employing unit as an individual or any type of organization, including partnerships, corporations, and similar associations, having in its employ one or more individuals performing services for it within this state, and defines wages as "remuneration payable by employers for employment." By an amendment, S. L. 1941, ch. (6) § 3 (f), p. 139, insurance agents and solicitors were expressly excluded. This amendment may be considered by us in arriving at the intent of the Legislature. Childers v. Paul, 177 Okla. 111, 57 P. 2d 872.

Section 19 (g) (1) of said law defines employment as follows:

" 'Employment' means service including service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied."

It defines remuneration as follows:

"(o) 'Remuneration' means all compensation payable for personal services, including commission and bonuses and the cash value of all compensation, payable in any medium other than cash. Gratuities customarily received by an individual in the course of his employment from persons other than his employing unit shall be treated as remuneration, payable by his employing unit. The reasonable cash value compensation payable in any medium other than cash, and the reasonable amount of gratuities, shall be estimated and determined in accordance with rules prescribed by the Commissioner."

The decisive question presented is whether, under the definitions above set out, the salesmen are in the employment of plaintiff. If they are, plaintiff is liable for contributions in respect to them, and is not entitled to recover. If they are not, then plaintiff is entitled to recover such payments in this action.

This is the first case in which the question involved has been before this court. Many decisions from other states are cited by counsel for the respective parties. They are hopelessly conflicting. Plaintiff cites, among others, A. J. Meyer & Co. v. Unemployment Compensation Commission, 348 Mo. 147, 152 S. W. 2d 184 (real estate salesmen); Guaranty Mortgage Co. v. Bryant et al., 179 Tenn. 579, 168 S. W. 2d 182 (real estate salesmen); Washington Recorder Publishing Co. v. Ernest, Director, et al., 199 Wash. 176, 91 P. 2d 718, 124 A. L. R. 667 (newspaper delivery boys); Fuller Brush Co. v. Industrial Commission of Utah, 99 Utah, 97, 104 P. 2d 201, 129 A. L. R. 511 (brush salesmen), all holding that the parties therein involved were not "in employment", or were excluded therefrom, under statutes similar to ours. Defendant cites Babb v. Huitt, Commissioner (Ga.) 21 S. E. 2d 663 (real estate salesmen); Rahoutis v. Unemployment Compensation Commission, 171 Ore. 93, 136 P. 2d 426 (real estate salesmen); Rozran v. Durkin, 381 Ill. 97, 45 N. E. 2d 180, 144 A. L. R. 735 (delivery service); Robert C. Buell & Co. v. Donaher, Commissioner et al., (Conn.) 18 Atl. 2d 697 (securities salesmen), and numerous other cases holding to the contrary. The divergent views expressed in these cases, and the

different theories upon which the decisions are predicated, render them of little value in the solution of the problem before us. Whether the statute applies only to those standing in the relation of master and servant, as held by some decisions, notably Meyer v. Unemployment Commission, supra, or includes relationships not embraced therein, as held in cases cited by defendants, need not be determined in the instant case, since it is apparent that the relationship of the salesmen and plaintiff was not that of master and servant.

Analysis of the statute convinces us that the intent of the Legislature, in enacting the law, was to protect from the evils of unemployment those persons occupying the status of employees, as that term is commonly understood, that is, "persons who work for another for wages or salary." Webster's International Dictionary. The Legislature recognized that one might be an employee, although his compensation was paid in the form of commissions, bonuses, or even in gratuities. But it did not seek to protect those who performed services for another for which he was under no obligation to pay, or those who, while ostensibly or incidentally serving another, were in reality engaged in their own independent business. The term "in employment", as used in the statute, when due consideration is given to the exclusionary amendment, above mentioned, necessarily implies a situation where one person is obligated, by an express or implied agreement, to perform services for another, the performance of which must be the principal occupation of the person so obligated and his principal source of income, and an obligation on the person served to pay for such services. To extend its implications further would make a person who performs casual or incidental services for another, for remuneration or otherwise, the employee of such other.

In the instant case there is no obligation on the salesmen to perform any service for plaintiff, nor is plaintiff obligated to pay them for any service rendered. There is no contract of hire, express or implied. Rather the association of plaintiff and the salesmen is in the nature of a joint venture, in which each party to the arrangement makes certain contributions and performs certain services in order to produce a result mutually profitable to them. Plaintill contributes its offices, office equipment and personnel, and such information as it may have, or such real estate listings as it may receive, and its efforts to close deals made by the salesmen, and to collect the commissions. The salesmen contribute their time and effort, the expense of seeking out prospective purchasers or borrowers and procuring from them contracts for the purchase of real estate or applications for loans. Each apparently considers that the arrangement is to their advantage. If it develops that it is not, either may terminate it at any time. Plaintiff is no more the employer of the salesmen than it is their employee. Neither is in the employment of the other. Each performs his function, and receives his remuneration, not from the other, but from a third party. Plaintiff collects the commissions, and turns over to the salesmen their proportion thereof, but in so doing it acts merely as a collecting agency pursuant to its agreement with the salesmen. If no commission is collected, the loss falls, not on plaintiff, but on both. Neither is performing the work of the other. Each is performing his allotted function in the joint enterprise. Therefore, the presumption stated in Ellis & Lewis v. Trimble, 182 Okla. 414, 78 P. 2d 312, does not apply.

In Guaranty Mortgage Co. of Nashville v. Bryant, 179 Tenn. 579, 168 S. W. 2d 182, the Supreme Court of Tennessee, commenting on a similar situation, said:

"The arrangement between the parties amounted to nothing more than that the salesmen were furnished free office space, telephone, etc., for which complainant received one-half the commission earned and actually collected on sales made by the salesmen, complainant closing the deals. Commissions were not paid by complainant, but by the parties

to the sale. Complainant did not pay, or promise to pay, any wages or commissions· to the salesmen. The situation was that the salesmen paid one-half of commissions earned by them to complainant, rather than that complainant was paying them commissions."

In Henry Broderick, Inc., v. Riley (Wash.) 157 P. 2d 954, the court, in passing upon a factual situation closely approaching the situation in this case, said:

"In the instant case an association was formed between appellant and these brokers for the mutual benefit of both. What term the parties may have applied to the relationship is not binding upon us. Appellant contributed to such enterprise certain office facilities, and the brokers contributed their services. Each party, for his contribution to the enterprise, was to receive half of the commission coming in from the sale of real estate as the result of their joint efforts. The half of the commission to which the broker was entitled upon completion of the deal never was intended to and never did become the property of the appellant. It was the property of the broker from the time it was earned, and was so considered by both parties. Appellant never agreed to pay and never did pay the brokers any wages or remuneration as those terms are defined in the statute, and was not in fact an employer of these brokers under the act, nor was the contract here involved a contract of hire."

We consider the statements of the courts in the above cases applicable to the situation here involved and think that the courts in those cases correctly diagnosed the true relationship of the parties to an arrangement such as is presented in this case. We conclude that the salesmen whose status is questioned in this action are not in the employment of plaintiff and that plaintiff should recover its contributions to the unemployment fund in respect of such salesmen.

Defendants assert that the evidence sustains the finding of the trial court, and that therefore the finding is conclusive, citing Lowe v. Hickory, 176 Okla. 426, 55 P. 2d 769, and other cases. We do not agree. In the instant case the evidence is undisputed, and therefore the question of the relationship of the parties is a question of law. Blackwell Cheese Co. v. Pedigo, 186 Okla. 159, 96 P. 2d 1043.

Reversed, with instructions to render judgment for plaintiff.

GIBSON, C.J., and BAYLESS, WELCH, DAVISON, and ARNOLD, JJ., concur. HURST, V.C.J., and RILEY, J., dissent.

---

HURST, V. C. J. (dissenting). The question presented is whether, under the record in this case, the real estate salesmen were in "employment" as that term is used in the Unemployment Compensation Law of 1936, S. L. 1936, Extr. Sess. c. 52, page 30, so as to make the broker liable for contributions under the taxing provisions of the act. The Labor Commissioner and Judge Babcock, the trial judge, answered this question in the affirmative. I think this conclusion is supported by the record and should be affirmed. The error in the majority opinion is in applying common law notions to the terms that are defined in the statute. The constitutionality of the statute is not involved. And the wisdom of the statute is not·for us to consider.

In 1935, Congress enacted the Social Security Act, which contained unemployment compensation provisions looking towards a co-operative effort on the part of the Federal and State Governments to relieve against the distress of unemployment with which the country was then suffering. It is my understanding that all the 48 states have enacted such legislation. The conditions that brought about the enactment of these statutes were stated in an opinion by Mr. Justice Cardoza in Steward Machine Co. v. Davis, 301 U. S. 548, 81 L. Ed. 1279, 57 S. Ct. 883,

109 A. L. R. 1293. These conditions were also stated by the author of the majority opinion herein in a dissenting opinion in State ex rel. Osage County Sav. & Loan Ass'n v. Worten, 167 Okla. 187, 29 P. 2d 1, 14, involving the constitutionality of the mortgage moratorium law.

As might be expected, there has been a flood of litigation resulting from the enforcement of these statutes. Many of the cases involve the taxing features. There is a great diversity of opinion among the courts as to what constitutes "employment" under the acts. Many of the cases are by divided courts with strong dissenting opinions. The state statutes are not all alike. In determining just what principle of law each case stands for, it is necessary to keep in mind the facts peculiar to the case as well as the language of the applicable statute. There have been so many opinions written in cases involving the acts that it seems that the subject has been fairly well exhausted. For a recent discussion of both the federal and state statutes, with a collection of cases and annotations involving them, see 48 Am. Jur. 511-542. See, also, American Digest, Master and Servant, Key No. 78.

Some of the courts take the view that the terms therein used, such as "employment" and "employee", are no broader than their common law counterparts, and that the taxing provisions, like ordinary taxing statutes, should be strictly construed against the taxing authority. Among the courts adhering to these views are those of Missouri, Tennessee, and Texas. See A. J. Meyer & Co. v. Unemployment Compensation Commission, 348 Mo. 147, 152 S. W. 2d 184; Guaranty Mortgage Co. v. Bryant, 179 Tenn. 579, 168 S. W. 2d 182; State of Texas v. The Praetorians (Tex.) 186 S. W. 2d 973, 158 A. L. R. 596. Other courts take the opposite view, holding that the terms "employment" and "employee" and others as used in the various statutes are much broader than their common law counterparts, that they embrace relationships not embraced in the relationship of master and servant as understood at common law, that the statutes are wholly remedial and have for their purpose relieving against the evils of unemployment, that the taxing features are only incidental to this main purpose and should be liberally construed in favor of the taxing authority, and that, in case of doubt as to whether a person is in "employment" under the statute, the doubt should be resolved in favor of the one claiming benefits or the taxing authority, as the case may be. Among the courts adhering to these views are those of Georgia, Oregon, Colorado, Illinois, Michigan, Connecticut, New Jersey, Virginia, North Carolina. See Young v. Bureau of Unemployment Compensation, 63 Ga. App. 130, 10 S. E. 2d 412; Babb v. Huiet, 67 Ga. App. 861, 21 S. E. 2d 663; Life & Casualty Ins. Co. v. Unemployment Compensation Comm., 178 Va. 46, 16 S. E. 2d 357; Robert C. Buell & Co. v. Danaher, 127 Conn. 606, 18 Atl. 2d 697; Industrial Comm. v. Northwestern Mutual Life Ins. Co., 103 Colo. 550, 88 P. 2d 560; Singer Sewing Machine Co. v. State Unemployment Compensation Comm., 167 Ore. 142, 103 P. 2d 708, 116 P. 2d 744, 138 A. L. R. 1398; Journal Publishing Co. v. State Unemployment Compensation Comm. (Ore.) 155 P. 2d 570, reviewing many recent authorities; Rahoutis v. Unemployment Compensation Comm. 171 Ore. 93, 136 P. 2d 426; Rozman v. Durkin, 381 Ill. 97, 45 N. E. 2d 180, 144 A. L. R. 735; Murphy v. Daumit, 387 Ill. 406, 56 N. E. 2d 800; Godsol v. Michigan Unemployment Compensation Comm., 302 Mich. 652, 5 N. W. 2d 519, 142 A. L. R. 910; Unemployment Compensation Comm. v. Jefferson Standard Life Ins. Co., 215 N. C. 479, 2 S. E. 2d 584; Schomp v. Fuller Brush Co., 124 N. J. L. 487, 12 Atl. 2d 702, 126 N. J. L. 368, 19 Atl. 2d 780.

Some of the courts, including the Washington court, have been on both sides of the question, and it does not seem possible to classify them. See the several opinions in State v. Superior Court (Wash.) 157 P. 2d 938 and Broderick v. Riley (Wash.) 157 P. 2d 954.

The dissenting views of Mr. Justice Mallery in the Broderick Case seem to me to be sound. The Oregon court in Singer Sewing Machine Co. v. State Unemployment Compensation, above, refers to the unsettled state of the law in both Washington and New York.

Since this case is one of first impression in this court, we can easily choose which line of authorities to follow, and in doing so we should keep in mind our first duty to ascertain and carry out the intention of the Legislature as declared and implied in our statute. By the majority opinion, this court has aligned itself on the side of the courts taking the strict construction view, first above stated. I think it is in error in doing so. The courts taking the second or more liberal view have all the better of the argument. Babb v. Huitt (Ga.) and the Rahoutis Case (Ore.), above, involving real estate salesmen under an arrangement practically the same as that involved in the present case, carry out the letter and spirit of the acts, and should be followed rather than the Missouri, Tennessee, and Washington cases, cited in the majority opinion, which construe the acts strictly.

Three pages of the act are devoted to definitions. See section 19, pages 45 to 48. We should look to these definitions in determining whether persons come within its provisions. The diversity of views among the courts and judges arises very largely by reason of failure to keep in mind these definitions, and in their adherence to common law rules.

The majority opinion, by following the cases from Missouri, Tennessee, and Washington, has in fact adopted a rule of strict construction so far as the taxing features are concerned. To do so is to defeat the manifest intention of the Legislature and to largely defeat the purposes of the act. While the taxing features are incidental to the main purpose to relieve against unemployment, they are vital to the act. The fund must be raised if the purposes of the act are to be carried out. The tax-ing provisions should be liberally construed in favor of the taxing authorities, just as the provisions for benefits should be liberally construed in favor of unemployed persons. In 48 Am. Jur. 522, it is said that "contributions under the acts and benefits paid thereunder are paid with respect to wages payable for employment." It would seem, then, that the same tests should be applied in determining whether persons are in employment in ascertaining whether they come under the taxing features as are applied in determining whether they are entitled to benefits under the act, so that if here the broker is not liable for contributions the salesmen would not be entitled to benefits.

The majority likens the relationship between the broker and the salesmen to that of joint adventurers. But, a joint adventure ordinarily contemplates a single enterprise, and in the absence of estoppel as to third persons, depends upon the intention of the parties to become joint adventurers. 30 Am. Jur. 677, 681. The arrangement between the broker and salesmen was that of a continuing relationship as to successive enterprises. The broker does not contend that a joint adventure was intended. It contends, rather, that the salesmen are independent contractors. The salesmen are more like employees than partners or joint adventurers even under common law principles. The court must construe the act strictly in order to reach the conclusion that the salesmen and the broker are joint adventurers.

In order to aid the courts in interpreting and carrying out the legislative intent, the Legislature declared the policy in section 2, as follows:

"As a guide to the interpretation and application of this Act, the public policy of this State is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this State. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the Legislature to prevent its spread and to lighten its burden which now so often falls with crushing force

upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of citizens of this State require the enactment of this measure, under the police powers of the State, for the compulsory setting aside of unemployment compensation funds to be used for the benefit of persons unemployed through no fault of their own."

This statement is found in many of the state acts. It should be deemed to have been inserted for a purpose.

And, no doubt, one of the important purposes to be served was to place the burden of caring for unemployed persons on employing units, so that in the future the taxpayers will not be required to do so by doles and madework and deficit spending.

The act constitutes remedial legislation in the interest of the general welfare, and, like all remedial statutes, it should be liberally construed in favor of the class for whose benefit it was enacted. 25 R. C. L. 1077; 50 Am. Jur. 417; 59 C. J. 1106. And in construing the statute, where its meaning is in doubt, "it is proper to take into consideration the particular evils at which the legislation is aimed, or the mischief sought to be avoided." 50 Am. Jur. 291.

"The Unemployment Compensation Act is primarily a public welfare measure and the levying of taxes thereunder is merely incidental to its purpose, which is to assure a measure of security against the hazard of unemployment in our economic life. Accordingly, we agree with the view that it should be liberally construed to effect its beneficent aims. Singer Sewing Machine Co. v. State Unemployment Compensation Commission, 167 Or. 142, 103 P.

2d 708, 116 P. 2d 744, 138 A. L. R. 1398. As we pointed out in Unemployment Compensation Commission v. Harvey, supra, 179 Va. at page 217, 18 S. E. 2d at page 397, the judicial trend is to hold that the act covers borderline cases such as that now before us." Unemployment Compensation Comm. of Virginia v. Collins, 182 Va. 426, 29 S. E. 2d 388, 393.

"While we are not inclined to quibble over the distinction between contributions and the assessment of payments, we are of the opinion that the amounts required to be paid do not come within the classification of general taxation, and that the statute is not a taxing statute and is entitled to liberal construction to the end that its purposes may be met." Zelney v. Murphy, Director of Labor, 387 Ill. 492, 56 N. E. 2d 754, 757.

The majority opinion quotes some of the definitions contained in section 19 of the act, but does not quote or give proper consideration to the most important provision, on which many of the courts of the country rely in holding that sewing machine salesmen, insurance salesmen, securities salesmen, real estate salesmen, and others are in "employment" under the taxing provisions of the act. I refer to subsection (g) (6) of section 19, which is as follows:

"Service performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the Commissioner that (a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and (b) such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (c) such individual is customarily engaged in an independently established trade, occupation, profession or business."

When it was established that the five salesmen were working from the plain-

tiff's office, endeavoring to sell real estate listed with it for sale and to loan money belonging to its customers, and receiving commissions on their work, a prima facie showing was made that they were in its "employment" receiving "remuneration" or "wages" as those terms are defined in section 19 of the act, and the burden then rested upon the plaintiff to bring itself within all three exceptions stated in section 19 (g) (6), above quoted.

Even in negligence actions, which are governed by common law principles, we are committed to this rule:

"Every person who is found performing the work of another is presumed to be in the employment of the person whose work is being done, and if the facts be such as to exempt the owner of the property improved, or the persons for whom the work is being performed, from liability for the acts of those performing such work, it devolves upon him who claims such exemption to make proof of the terms of the contract showing that the relation of master and servant did not exist." Oklahoma City Construction Co. v. Peppard (1914) 43 Okla. 121, 140 P. 1084; Ellis & Lewis v. Trimble (1938), 182 Okla. 414, 78 P. 2d 312.

Passing over the (a) test, that of control, I am of the opinion that the plaintiff has not shown that it comes within exclusionary tests (b) and (c) of section 19 (g) 6.

As to the (b) test, it is shown that part of the services of the salesmen is performed in the office of the plaintiff and over the telephones in its office. They had to leave the proposed contracts at plaintiff's office so the plaintiff could complete the transactions. They received lists of properties and prospects at plaintiff's office. They negotiated the transactions in the territory where plaintiff did its business. Thus part of the service was performed in plaintiff's office and place of business, and all of it was performed in the territory in which plaintiff operated. It certainly cannot be said that such service was performed "outside all of the places of business" of the broker. And in selling the real estate listed with the plaintiff and in negotiating loans for customers of the plaintiff, the salesmen were undoubtedly performing service in the usual course of plaintiff's business. The plaintiff has not, therefore, brought itself within the (b) exception.

As to the (c) exception, it is not shown that the five salesmen were actually engaged in an independently established trade, occupation, profession, or business. One of them devoted a part of his time to a trust estate. The others devoted all their time to the plaintiff's business. It is not enough that the salesmen might have been engaged in an independently established occupation, profession, or business. They were not in fact customarily so engaged. On their discharge by plaintiff, they would not have had an independently established business, trade, occupation, or profession to fall back upon, but would have joined the ranks of the unemployed.

In construing and enforcing the act, the Labor Commissioner, his successor, the Oklahoma Employment Security Commission, and the courts should always keep in mind the evils to be remedied and the purposes to be accomplished, as stated in section 2, above quoted. And it would seem that unemployed real estate salesmen are in as much need of assistance as other unemployed persons.

It is intimated in the majority opinion that the broker was under no obligation to pay the salesmen. But, under the arrangement between them, the broker closed the deals and collected the commissions and then became indebted to the salesman making the sale or loan for his portion of the commission, which constituted "remuneration" as defined by the statute. We must remember that the broker was agent for the owner of the property listed for sale and the money to be loaned. The salesmen represented the broker, not the owners of the property or money.

The decision of the Labor Commissioner that the real estate salesmen here involved were in "employment" under the act was rendered on June 16, 1939. Several sessions of the Legislature have been held since that time, and the act has been several times amended, but it has not excluded real estate salesmen from coverage, but, in 1941, it did exclude insurance salesmen. It must have known that, in other states, insurance salesmen had been held to be in "employment" under the acts and to have disapproved such construction by expressly excluding them from coverage. It is presumed to have been familiar with the decision of the Labor Commissioner that these real estate salesmen are in "employment" under the act, and by failing to legislate on the subject, it should be presumed to have acquiesced in the construction placed upon the act by the Labor Commissioner. McCain v. State Election Board, 144 Okla. 85, 289 P. 759; 59 C. J. 1030; 50 Am. Jur. 318.

The fact that an individual seeking benefits or on whom it is sought to avoid paying contributions, under the act, may be referred to as "independent contractor", "salesman", "dealer", "distributor", "lessee", "vendee", or by any other designation, is of little importance in determining whether he is in employment. Many of such persons are held to be in "employment" under the act who would not be held to be employees in negligence cases or under common law rules. Any other rule would make it easy for employing units to evade the law and would invite attempts at evasion. Such will probably be the result of the majority opinion in the instant case.

I conclude this opinion by stating the seven rules of law that I think should govern the decision in the instant case and should constitute the syllabus:

1. The Oklahoma Unemployment Compensation Law covers only individuals who are or have been in "employment" and who receive "wages" as those terms are therein defined, and the same tests are to be applied in determining whether an individual on whom it is sought to collect a contribution or tax is in "employment" under the Law as are to be applied in determining whether the individual is entitled to benefits under the Law.

2. The Oklahoma Unemployment Compensation Law was enacted pursuant to the police power of the state. The taxing features thereof are incidental to the main purpose to relieve against the distress of unemployment. All the provisions of the law, including the taxing features, are to be liberally construed as are all remedial acts.

3. The fact that the individual who seeks benefits under the Oklahoma Unemployment Compensation Law, or on whom it is sought to collect a contribution or tax thereunder, may be referred to as a "salesman", "dealer", "distributor", "lessee," or by any designation other than that of "employee" is not controlling on the question of whether he is in "employment" thereunder, but may be considered along with all the other circumstances.

4. When it is established that a real estate broker is an "employing unit" within the meaning of that term as used in the Oklahoma Unemployment Compensation Law, and that salesmen are working from the office and are receiving a share of the commissions collected on the business they bring into the office of the employing unit, the burden then rests upon the broker to prove that the salesmen come within all of the three exceptions stated in section 19 (g) (6) of the law, where the broker seeks to recover contributions paid by it under protest.

5. The terms "employment", "personal services", "remuneration", and "wages," as defined by the Oklahoma Unemployment Compensation Law, are broader than their common law counterparts, and cover persons and relationships not included in the common law relationship of master and servant.

6. Where real estate salesmen negotiate sales of real estate listed with a

318

broker, and use the telephone in the broker's office, leave proposed contracts in the broker's office for completion, receive lists and prospects at the broker's office, and negotiate the sales in the territory where the broker does its business, such service is not performed outside the usual course of business or outside the usual place of business of the broker, so as to come within the exception stated in section 19 (g) (6) (b) of the Oklahoma Unemployment Compensation Law.

7. Where real estate salesmen perform their work for a real estate broker from the broker's office, and are engaged in no independent trade, occupation, profession, or business, separate and apart from that of the broker, and would join the ranks of the unemployed in the event of their discharge, they are not customarily engaged in an independently established trade, occupation, profession, or business so as to come within the exception stated in section 19 (g) (6) (c) of the Oklahoma Unemployment Compensation Law.

For the foregoing reasons, I respectfully dissent.

RILEY, J., concurs in this dissent.