18359

H. Bland HAMMOND, Jr., Mary B. Bollin and Frank A. Burgdorf, Co-Partners, d/b/a John Bollin and Company, Respondents, v. SOUTH CAROLINA EMPLOYMENT SECURITY COMMISSION, Appellant.

(142 S. E. (2d) 876)

*Robert G. Horine, Esq., of Columbia, for Appellant,*

*N. Heyward Clarkson, Jr., Esq.,* of Columbia, *for Respondents,*

June 14, 1965.

TAYLOR, Chief Justice.

Plaintiffs brought this action against the South Carolina Employment Security Commission seeking an injunction

against the assessment of unemployment compensation tax on the commission earnings of real estate salesmen engaged by plaintiffs and an Order requiring the refund of $548.99 in unemployment compensation taxes already paid, under protest, upon the remuneration of salesmen associated with plaintiffs between January 1, 1961, and April 1, 1962.

An answer and return were filed by defendant admitting plaintiffs had paid the amount in taxes under protest and that a demand for the return thereof had been refused. Defendant further alleged that the commission earnings paid to the real estate salesmen by plaintiffs constituted taxable wages under the definitions contained in the Unemployment Compensation Law.

This matter came to be heard before the Honorable Jack Wright, Special Judge for the Equity Court of Richland County, who in his Decree of May 20, 1964, required defendant to refund to plaintiffs the taxes assessed against them together with interest.

The sole question raised by this appeal is whether or not the commissions disbursed to real estate salesmen by plaintiffs were subject to the imposition of the unemployment compensation tax as having been paid as wages for services performed in employment covered by the South Carolina Unemployment Compensation Law.

The question presented is a novel one in this State, and the decisions from other states which have passed on the question are in hopeless conflict. In 1962 the Legislature amended the exempted employment section so as to specifically exclude real estate salesmen from the provisions of the Act. Section 68-25 (14.1) Cumulative Supplement, Code of Laws of South Carolina, 1962. However, in determining this appeal the law in force at the time the taxes were collected must control.

The pertinent provisions of the Unemployment Compensation Law are as follows:

"Section 68-22. Wages.—(1) 'Wages' means all remuneration paid for personal services, including commissions and bonuses. * * *."

"Section 68-14. E m p l o y m e n t.—(1) 'Employment' means service, including service in interstate commerce, performed for wages or under contract of hire, written or oral, expressed or implied. * * *

"(5) Services performed by an individual for wages shall be deemed to be employment subject to this Title unless it is shown to the satisfaction of the Commission that:

"(a) Such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact;

"(b) Such service is either outside the usual course of the business for which such service is performed or such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(c) Such individual is customarily engaged in an independently established trade, occupation, profession or business."

Plaintiffs, a partnership, conduct a business consisting of the brokerage of real estate and the handling and management of rental real estate property. Their place of business has a reception room, several offices, a book for listing of property placed with them for sale, several telephones, and two or three clerks employed. The rental business is handled by the partners together with the clerks and certain personnel employed for this purpose. All partners solicit the listing of real estate for sale upon commission and also engage in the sale thereof; and in addition thereto, the partnership has agreements with various individuals to participate in the sale of the real estate, and it is these individuals who have heretofore been referred to as real estate salesmen. The agreements with these real estate salesmen are oral, and the basic terms of the agreements are that

the salesmen receive half the commission paid by any land-owner for the sale of property listed with plaintiffs which they sell. All matters appertaining to the collection of the commission from the landowners upon consummation of a sale are handled solely by plaintiff. Payment by the vendor to plaintiff is a prerequisite to the payment by plaintiffs to a salesman of his portion of the sales commission. This is the salesman's sole compensation, and plaintiffs have no responsibility therefor except to deliver to the sales-man his proportionate share. If a sale is not completed and the landowner pays no commission, the salesman receives nothing. Plaintiffs receive the other half of the commis-sion paid by any landowner in return for procuring listing of the property, advertising of same and furnishing the salesmen office space and telephone service in the office, if desired by the salesmen. The agreement is for no definite period and is terminable at will by either party. The sales-men may keep any hours they wish, devoting as little or as much time to selling as they may wish, and engage in any other work, except that they cannot practice their pro-fession or occupation as real estate salesmen by selling property for other brokers without plaintiffs' consent. Plain-tiffs purchase and keep in effect the license required by law for real estate brokers and each salesman purchases his individual license for the sale of real estate, and pays the cost thereof himself.

Under the agreement with the salesmen, the salesmen furnish their own transportation and pay all the expenses of their respective occupations or professions as real estate salesmen. No advances are made against unearned future commissions, no Social Security, federal withholding or state income tax are deducted from the commissions of the salesmen by the plaintiffs and no vacation pay, or any remuneration other than the commissions earned by the salesmen is provided. The salesmen can, if they desire, make use of the office space and telephone provided by the plaintiffs without charge, and may list plaintiffs' telephone

number in their names in the telephone directory. Contracts by salesmen with prospective purchasers are made as often from the salesmen's homes and other outside phones as they are from the phones in the office of the plaintiffs. The contract for sale and purchase of property is negotiated exclusively by the salesmen, usually outside the office of plaintiffs and normally signed away from plaintiffs' offices. The salesmen have the right to agree to a closing date for any sale without obtaining the prior approval of plaintiffs. The salesmen usually attend closing of the sales made, which generally take place in the office of a building and loan association, a lawyer, or a bank, and not in the offices of plaintiffs. In the conduct of business between plaintiffs and the salesmen, the plaintiffs do not control or direct the salesmen in their activity or method of making a sale, and they are not required to call on any particular prospect or prospects. Each salesman determines which property he will attempt to sell or for which he thinks he has a prospect and proceeds to accomplish the sale in the manner he feels best. The salesmen are not subject to orders of plaintiffs at any time. Salesmen are not required to obtain listings or property for sale. Plaintiffs do not require salesmen to take any training; however, from time to time plaintiffs do hold meetings at which the various properties listed and possible sales techniques are discussed, but no salesman is required to attend.

Under our Act, in order to be covered the real estate salesmen must perform services for wages under a contract of hire, written or oral, express or implied. If it has been determined that the service rendered falls within the definition of "employment" as used in the Act, then in order to be excluded from the provisions of the Act, it must be "shown to the satisfaction of the Commission" that the employment is within the execlusionary provisions of Section 68-14(5) (a) (b) and (c), Code of Laws of South Carolina, 1962.

These three factors are not given for the purpose of
■ determining whether a certain labor performed or
service rendered, comes within the term "employment" as used in the Act, or for determining whether such labor or service is performed for "wages" as used in the Act. Subhead (5) applies only to cases where the work or service rendered comes within the term "employment" as defined in the Act and was performed for "wages or under contract of hire." Until such determination, subhead (5) has no application. These conditions, indicate a Legislative intent to make an exception, to eliminate from the operation of the Act certain kinds of personal service in private industry rendered for wages but which could not well be defined by a single word or class designation. See *Fuller Brush Co. v. Industrial Commission of Utah,* 99 Utah 97 104 P. (2d) 201, 129 A. L. R. 511.

In an annotation on the subject in 29 A. L. R. (2d), Sec. 6, p. 772, it is stated that "In the majority of the later cases in which the question has arisen, real-estate salesmen or brokers working on a commission basis have been held not to be within unemployment or social security acts."

In the case of *Guaranty Mortgage Co. v. Bryant,* 179 Tenn. 579, 168 S. W. (2d) 182, the Tennessee Unemployment Act appears to be quite similar to the South Carolina Act. There the Court decided that real estate salesmen, operating substantially as those did here, did not perform services for wages or under a contract of hire within the definition of employment of the Tennessee Act. The Tennessee Court said:

"The arrangement between the parties amounted to nothing more than that the salesmen were furnished free office space, telephone, etc., for which complainant received one-half the commission earned and actually collected on sales made by the salesmen, complainant closing the deals. Commissions were not paid by the complainant, but by the parties to the sale. Complainant did not pay, or promise to pay, any wages or commissions to the salesmen. The

situation was that the salesmen paid one-half of commissions earned by them to complainant, rather than that complainant was paying them commissions."

■ In determining whether real estate salesmen are covered by the Act, the meaning of the word "service" as used therein must be ascertained. Under the definitions used in the Act, "wages" means all remuneration paid for "personal services" and "employment" means "services" performed for wages or under a contract of hire. In our opinion the service or services performed by an individual for wages as contemplated by the Act must be service or services for an employer and such wages must be paid by such employer to the employee.

■ In the instant case, there is no obligation on the salesmen to perform any service for plaintiffs, nor are plaintiffs obligated to pay them for any service rendered. There is no contract of hire, express or implied. Rather the association of plaintiffs and the salesmen is in the nature of a joint venture, in which each party to the arrangement makes certain contributions and performs certain services in order to produce a result mutually profitable to them. Plaintiffs contribute their offices, office equipment and personnel and such information as they may have, or such real estate listings as they may receive, and their efforts to close deals made by the salesmen and to collect the commissions. The salesmen contribute their time and effort, the expense of seeking out prospective purchasers or borrowers and procuring from them contracts for the purchase of real estate or applications for loans. Each apparently considers that the arrangement is to his advantage. If it develops that it is not, either may terminate it at any time. Plaintiffs are no more the employer of the salesmen than they are their employee. Neither is in the employment of the other. Each performs his function, and receives his remuneration, not from the other, but from a third party. Plaintiffs collect the commissions and turn over to the salesmen their portion; but in so doing, they act merely as

a collecting agency pursuant to their agreement with the salesmen. If no commission is collected, the loss falls, not on plaintiffs but on both. Neither is performing the work of the other. Each is performing his alloted function in the joint enterprise. See *Realty Mortgage and Sales Co. v. Oklahoma Employment Security Commission,* 197 Okl. 308, 169 P. (2d) 761.

For the foregoing reasons, we are of opinion the real estate salesmen here did not perform services for, and were not in the employment of, plaintiffs within the contemplation of the South Carolina Unemployment Compensation Law; that the Decree appealed from should be affirmed; and it is so ordered. Affirmed.

Moss, LEWIS and BUSSEY, JJ., and LIONEL K. LEGGE, Acting J., concur.