**SEE BEN REALTY CO., a Wyoming Corporation, Appellant (Plaintiff below),**

v.

**EMPLOYMENT SECURITY COMMISSION of Wyoming, Appellee (Defendant below).**

No. 3491.

Supreme Court of Wyoming.

June 30, 1966.

George M. Apostolos, of Brown, Healy, Drew, Apostolos & Barton, Casper, for appellant.

John F. Raper, Atty. Gen., Cheyenne, James G. McClintock, Sp. Asst. Atty. Gen., Casper, Wehrli & Williams and Houston G. Williams, Casper, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Plaintiff company, licensed by the State as a real estate broker, sued to recover from the Employment Security Commission contributions paid under protest after they had been assessed on account of the earnings of two salesmen working out of plaintiff's office and sponsored by it. The trial court, finding that the salesmen were employees within the meaning of the statutes and that the plaintiff was therefore obligated to pay the assessment, gave judgment for the defendant; and this appeal has resulted, presenting the question of whether or not real estate salesmen under the circumstances shown by the record are employees within the meaning of the Wyoming Employment Security Law, §§ 27–22—27–41, W.S.1957.

The facts are undisputed, the court's unchallenged findings disclosing that: plaintiff was a licensed real estate broker with an office at Casper, the two salesmen operating out of its office under an informal oral agreement with no wages or salaries paid to them by plaintiff for their services, their only compensation being derived from an agreed participation in a share of the commissions obtained from the sale of real

estate by the salesmen while operating out of plaintiff's office; plaintiff attended to all closing of such sales, collecting commissions and distributing them to the proper parties; the amount of commission which a salesman received varied since plaintiff was a member of the Casper Multilist Exchange, which received a certain portion of all commissions, and if the property sold was a listing obtained from another real estate agency said agency also received a portion of the commission, plaintiff and the salesman splitting the balance of the commission of any sale made by the latter, as well as splitting the cost of items necessary for the sale (e. g., new locks put on a house in order to make it saleable); the salesmen were not required or expected to be in plaintiff's office during any specific hours and took vacations as they wished; a rule of the Casper Board of Realtors prohibited associated real estate salesmen from holding other full-time jobs or engaging in other full-time professions; Scherck, one of the concerned salesmen, worked almost exclusively as a real estate salesman but engaged in some other part-time activity (principally property-management work for plaintiff), while Garrett, the other mentioned salesman, devoted the majority of her working hours to the selling of real estate, ordinarily working out of her home, but devoting considerable time to the management of her own real estate properties; plaintiff set out broad policies, which it expected the salesmen to follow, but exercised no control over the general or routine performance of the salesmen's services, required no specific reports, and had no formal sales meetings, which they must attend; plaintiff provided an office, stenographic help, general office supplies, stationery, forms for purchase contracts, sales agreements, closing agreements, telephone service, etc., and would pay up to fifty dollars per month to advertise properties listed by each of the two salesmen,

who prepared ads or suggested a property to be advertised; if a salesman wished to place more than fifty dollars per month in advertising, he paid for the additional; a salesman furnished and paid for a telephone in his residence, which was listed in advertisements, supplied his own automobile, and paid all costs relating to it and for his bonds, license, business cards, and other expenses; plaintiff did not collect social security or withhold Federal income tax on behalf of its salesmen and paid no occupation tax to the city for them—a salesman filing his own individual income tax return on Schedule C and reporting and paying his own employment tax; and because of the nature of the salesmen's occupation and the extent to which their remuneration depended on their own individual efforts, the salesmen did not receive any certain amount of money over a particular period—at times they might go for a month or more without earning or receiving a commission and at other times might earn and receive several commissions in one month.

In addition to these findings, the parties without dispute say that the record discloses certain other germane facts, the plaintiff asserting that at the time of the trial there had been no claim for unemployment benefits submitted by real estate salesmen; that the defendant had advised an inquiring salesman that he would not be considered to be unemployed within the meaning of the Wyoming "Unemployment Compensation Act" as long as he had a valid license, was associated with a broker, and still qualified to sell property; that the relationship between plaintiff and a salesman could be terminated by either party at any time without notice, whereupon a salesman could find another sponsoring broker and thereafter immediately resume selling.[1] The defendant calls attention to testimony indicating that a broker is required to close every real es-

---

1. Although appellant insists in its brief that "Few, if any, real estate salesmen in Wyoming earn a commission in each of twenty-six weeks in any one year, so that they would [under § 27–25, W.S.1957 (1965 Cum.Supp.)] qualify for benefits," we must agree with appellee that such a statement is no more than conjecture on the part of appellant. Even if such were the case, it could not affect any decision in the matter before us; rather, it would be for the salesmen thereby affected to bring the inequity of such a situation to the attention of their legislators.

tate transaction and to handle all the money; that subsequent to January 1, 1963, it was plaintiff's policy not to have part-time salesmen and at that time three part-time salesmen were told that they should either find another sponsoring broker or put their license on the inactive list; that plaintiff asked salesmen to be available thirty hours per week for the showing and production of sales, that under the existing practice whenever earnest money was paid to a salesman he endorsed the check to the plaintiff and deposited it in an escrow account, which plaintiff had established for that purpose; that plaintiff's president disbursed the commission to the listing broker, Multilist, and his sales personnel; that plaintiff kept regular office hours, expected its salesmen to maintain certain ethical standards and contribute to its good will, to make no misrepresentations or unrealistic listing, or buy property on his own account, and in general to live up to the code of ethics of the real estate profession, which policy plaintiff enforced; that plaintiff had sponsored radio, television and directory ads, at its own expense, paid for signs upon properties listed for sale, without the name of a salesman being on the sign, and kept files and records in its office available to each salesman, who also secured messages from and picked up listings at the office; that plaintiff's president saw no reason for having sales meetings but would have arranged these if he thought they had been necessary and would have asked the salesmen to attend.

Plaintiff argues that the association of salesmen with the broker does not constitute employment within the meaning of § 27-23, subd. I, that instead the salesmen are affiliated with plaintiff as independent contractors, to which situation the provisions of §§ 27-22—27-41 do not apply, and that the provisions of the Real Estate Brokers and Salesmen Act, §§ 33-344—33-355, W. S.1957, passed generally to protect the public from dishonest and untrustworthy real estate salesmen who might defraud the public, should not be construed to bring real estate salesmen within the provisions of the Employment Security Law. In so arguing, plaintiff sets out § 27-23, subd. I, par. 1:

" 'Employment' means any service performed prior to April 1, 1941 which was employment as defined in this subsection prior to such date, and after April 1, 1941, 'employment', subject to the other provisions of this subsection, means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied."

and § 27-23, subd. N:

" 'Wages' means all remuneration payable for services from whatever source, including commissions and bonuses and the cash value of all remuneration payable in any medium other than cash. * * * "

saying that even though wages are defined to include remuneration from any source, including commissions and bonuses, the Act when it refers to employment nonetheless means employment in a true sense, citing Realty Mortgage & Sales Co. v. Oklahoma Employment Security Commission, 197 Okl. 308, 169 P.2d 761.

The question here is not a novel one, having heretofore arisen numerous times in the various states under statutes quite similar to those in Wyoming.[2] The courts in interpreting such statutes arrive at diverse results,[3] disclosing a clear split of authority, as explained in 48 Am.Jur. Social Security, Unemployment Insurance, and Retirement Funds, § 21, and various A.L.R. Annotations, culminating in that found at 29 A.L. R.2d 751 and 3 A.L.R.2d Later Case Service, p. 1162.

2. The historical setting of the Wyoming Act was discussed by Judge Blume in Janssen v. Employment Security Commission, 64 Wyo. 330, 192 P.2d 606, 608. The Act itself, by the adoption or paraphrase of many sections, shows the influence of the January 1936 "draft bill relating to unemployment compensation" prepared by the United States Social Security Board.

3. See generally 19 Wyo.L.J. 70.

In general, it may be said that the crux of the different viewpoints stems in part from a tendency on the one hand to hold that employment security statutes should be interpreted liberally in order to accomplish the purposes which the legislative body had in mind in providing the benefits to the employees, and on the other hand to hold that the statutes should be interpreted liberally in favor of the taxpayer and strictly against the taxing authority. This court in 1942, Tharp v. Unemployment Compensation Commission, 57 Wyo. 486, 121 P.2d 172, had occasion to pass upon a question very similar to that before us today, whether barbers were employees within the meaning of the Act. Chief Justice Riner then used a real estate salesman's case from another jurisdiction as an analogy in arriving at conclusions that (1) where the trial court finds the relationship of employer and employee.to exist, this court will examine to ascertain if the finding is sustained by substantial evidence, (2) a test of that relationship is whether either of the parties possess the right to terminate the services at will, without incurring liability to the other, an affirmative answer establishing the status of master and servant, and (3) under the circumstances there disclosed by the evidence, the barbers were "employees," notwithstanding a specific clause in their contract stating that they were not. That decision established a precedent in this jurisdiction, and unless we now elect to overthrow it, the views of other courts are unimportant. No reason has been presented which seems to us sufficient for a reversal of viewpoint. Defendant contends in the appeal that Lowmiller v. Monroe, Lyon & Miller, Inc., 101 Cal.App. 147, 281 P. 433, 282 P. 537, the real estate broker case relied upon in Tharp, has been expressly overruled by the California court. Even if this were true, it would not be determinative of our interpretation, but we find that such a generality is hardly justified for the court in the asserted overruling merely said:

" * * * Accordingly, the occupation of real estate salesman, insofar as the Unemployment Insurance Act is concerned, is one that may be classified as that of an employee, or an independent contractor, *depending upon the facts of the particular case.* * * * Insofar as Lowmiller v. Monroe, Lyon & Miller, Inc., * * * is contrary to this conclusion, it is disapproved." (Emphasis supplied.) California Employment Stabilization Commission v. Morris, 28 Cal.2d 812, 172 P.2d 497, 500, 501.

We think the principles enunciated in the Tharp case were valid and approve them; the trial court correctly applying those principles to the instant situation arrived at a correct result. Consideration of the testimony disclosed by the record in the light of the public policy statement of the Wyoming Employment Security Law set forth by the legislature and in pari materia with the Real Estate Brokers and Salesmen Act, as this court in Tharp announced to be correct, reveals substantial evidence upon which the trial court's finding could be predicated.

The judgment is affirmed.

Mr. Justice McINTYRE, dissenting.

I am unable to agree with may colleagues as to the result in this case. However, I think no useful purpose will be served by a lengthy discussion of our areas of disagreement.

It is clear and apparently undisputed that real estate salesmen do not and cannot obtain benefits under the Wyoming Employment Security Law, §§ 27–22 to 27–47, W. S.1957—a situation which existed both before and after the 1963 amendment to § 27–25, requiring a recipient of benefits to have earnings in each week for 26 weeks. That being so, it is difficult for me to believe the legislature intended to assess a special purpose unemployment tax in such a manner that a whole class of persons for whose benefit the tax is levied would never be able to obtain benefits from the act.

I consider real estate salesmen independent contractors not covered by the Employment Security Law. Provisions of the Real Estate Brokers and Salesmen Act, §§ 33–344 to 33–355, W.S.1957, are not in pari materia

with provisions of the Employment Security Law, and those provisions which treat real estate salesmen as employees for purposes of the real estate laws should not be construed as making them employees for purposes of the unemployment laws.